CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/17/2020

JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **LARRY ANTHONY BOOKER,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No.:**   6:20CV00011 |
| | ) | |
| **CITY OF LYNCHBURG,** | ) | |
| | ) | |
| **LYNCHBURG CITY CHIEF OF POLICE** | ) | |
| | ) | |
| **LYNCHBURG CITY** | ) | |
| **POLICE DEPARTMENT,** | ) | |
| | ) | |
| **POLICE OFFICER #1 LUKE SCHARTIGER** | ) | |
| **(In official capacity and as individual)** | ) | |
| | ) | |
| **POLICE OFFICER #2 JONATHAN BRAGG** | ) | |
| **(In official capacity and as individual)** | ) | |
| | ) | |
| **POLICE OFFICER #3 NATHAN R. GODSIE** | ) | |
| **(In official capacity and as individual)** | ) | |
| *Defendants.* | ) | |
| | ) | |
| **Serve: City Hall** | ) | |
| **Walter C. Erwin, Esq.** | ) | |
| **900 Church Street** | ) | |
| **Lynchburg, Virginia 24504** | ) | |

---

### *CIVIL COMPLAINT*

---

1.  This is an action for deprivation of civil rights under the Civil Rights Act, pursuant to *42 U.S.C. Sec. 1983*, and under state law for assault and battery, and illegal search. Plaintiff brings this civil rights action to redress the deprivation under color of state law of the rights, privileges and immunities secured to him by the Constitution of the United States and the laws of the United States and the Commonwealth of Virginia. Plaintiff brings forth claims for violation of his right to be free from unreasonable and excessive use of force upon his

person during arrest and detention in violation of the *Fourteenth Amendment*, for civil conspiracy pursuant to *42 U.S.C. Sec. 1983*, and state law claims for assault and battery and illegal search. Plaintiff brings this action against the Lynchburg City Police Officers responsible for his injuries, against the Lynchburg Chief of Police as the supervisory officer responsible for the conduct of the Lynchburg City Police Officers and final policymaker for the City of Lynchburg Police Office, and against the Lynchburg City Police Department, which is sued as a person under 42 U.S.C. Sec. 1983, as the entity responsible for the promulgation of a policy or custom regarding the use of excessive force, and against the City of Lynchburg, as the Plaintiff seeks compensatory and punitive damages, declaratory and injunctive b relief, and attorney's fees and costs.

## *JURISDICTION AND VENUE*

2.   This Court has jurisdiction over this action pursuant to *28 U.S.C. Sections 1331, 1343,* and *1367.*

3.   Venue is proper in this District under *28 U.S.C. Sec. 1391(b),* as a substantial part of the unconstitutional acts and omissions complained of occurred in the City of Lynchburg of the Western District of Virginia.

## *PARTIES*

4.   Larry Anthony Booker is currently an incapacitated individual incarcerated within the Commonwealth of Virginia, residing at the Blue Ridge Correctional Facility in Amherst, Virginia.

5.   Lynchburg City Government (the "City") operates from within City Hall at 900 Church Street, Lynchburg, Virginia 24504, and was a municipal corporation existing under the laws of the Commonwealth of Virginia. The City is a chartered subdivision of the

Commonwealth of Virginia with the capacity to be sued. The City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Lynchburg City Police Department ("LCPD"), its K9 element and its agents and employees. At all relevant times, the City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LCPD and its employees and agents complied with the laws of the United States and of the Commonwealth of Virginia. At all relevant times, the City was the employer of Defendants L.I. Schartiger ("Schartiger"), J.H. Bragg ("Bragg"); N.R. Godsie ("Godsie"); (hereinafter collectively referred to as "the individual defendants").

6.      Lynchburg City Police Chief ("Chief") operates from within 905 Court Street, Lynchburg, Virginia 24504, is a supervisory officer and Commander working for the City, through his employment with the LCPD. At all relevant times, the Chief was acting under color of law within the course and scope of his duties as a supervisory officer for the LCPD. Also at all relevant times, the Chief was acting with the complete authority and ratification of his principal, the City. At all relevant times, the Chief had supervisory authority.

7.      Lynchburg City Police Department operates from within 905 Court Street, Lynchburg, Virginia 24504.

8.      Officer Schartiger works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504. At all relevant times, Schartiger was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Schartiger was acting with the complete authority and ratification of his principal, the City.

9.      Officer Bragg works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504. At all relevant times, Bragg was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Bragg was acting with the complete authority and ratification of his principal, the City.

10.     Officer Godsie works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504, and is an officer working for the City, through his employment with the LAPD and its K9 team. At all relevant times, Godsie was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department and its K9 team. Also at all relevant times, Godsie was acting with the complete authority and ratification of his principal, the City.

## FACTUAL BACKGROUND

11.     This incident occurred on July 18, 2018, at approximately 15:25 p.m., at or around the intersection of Taylor Street and 16th street in the City of Lynchburg, Commonwealth of Virginia.

12.     Officers Schartiger and Bragg were patrolling the area as part of the "Special Investigations Response Team" by getting "behind cars [to] see if there's anything going on."

13.     Mr. Larry Anthony Booker was being pulled over by Officer Schartiger and Officer Bragg for a minor traffic violation.

14.     Mr. Booker complied with the vehicle stop and informed the officer that he did not have a driver's license.

15.   While sitting in the vehicle, the Officers requested to search the vehicle, Mr. Booker politely exercised his constitutional right to deny the officer of a consensual search and plainly responded "no".

16.   Mr. Booker was then told to exit his vehicle and stand with Officer Bragg, while Officer Schartiger claimed to write a summons for Driving While Suspended.

17.   Mr. Booker was patted down/searched immediately upon exiting the vehicle.

18.   While Mr. Booker was calmly standing in proximity to Officer Bragg, Officer Schartiger performed an illegal search of the vehicle, however, did not observe any weapons, but allegedly observed packaging claimed to be consistent with drug packaging and drugs.

19.   The Officer had no authority to search the vehicle, and it was not likely that any evidence would be discovered related to Mr. Booker's traffic infraction or driving with a suspended license.

20.   Officer Schartiger, advises the on scene K-9 officer to run the vehicle, while he now starts to write the summons.

21.   Officer Schartiger alleges that he stood near while beginning to write the summons because Mr. Booker exhibited signs of an individual who wants to run away.

22.   K9 Officer Godsie "ran" the vehicle and indicated that the "dog alerted" at the trunk, then Officers Schartiger, Bragg, and Godsie tried to immediately detain Mr. Booker.

23.   Mr. Booker was not told that he was under arrest, but was told to put his hands behind his back and to stop resisting.

24.   Officers Bragg and Schartiger grabbed Mr. Booker's arms while Officer Godsie stood in front of Booker threatening him with the dog.

25.     Officer Schartiger allegedly had to take Mr. Booker "down" to "affect an arrest", by grabbing both of Mr. Booker's legs.

26.     When Booker first hit the ground he had Officer Braggs arm around his throat, Bragg had one arm pent up and Officer Schartiger had the other arm.

27.     Officer Schartiger testified that Mr. Booker kept asking what they were doing and stating that he was not resisting.

28.     It was around this time that Officer Godsie had the dog attack Mr. Booker.

29.     Officer Godsie testified that the dog, Arko, was trained to protect him and when people are close Arko is trained to bite, and in this case he was ordered to bite Mr. Booker.

30.     Officer Godsie testified that on the initial scan of the car Arko stopped at the trunk, turned and faced the vehicle, and had increased respirations and began detailing the bottom of the trunk seam on his own, which is Arko's "alert".

31.     Officer Godsie admitted that Arko would detect the smell of drugs more than a couple of days after drugs have been removed from a location.

32.     Officer Godsie testified that he gave Arko the command to apprehend while Mr. Booker was on the ground with Officers Bragg and Schartiger.

33.     While Mr. Booker was being held on the ground by Officers Bragg and Schartiger, and the dog was biting or locked onto his leg, Officer Godsie struck his legs over a dozen times and Officer Bragg struck Mr. Booker several times in the arm and head.

34.     The dog would not release Mr. Booker's leg even after Mr. Booker was hand cuffed and Officer Godsie appeared to be attempting to obtain a release by raising the dog, and Mr. Booker's leg, into the air and giving him several commands.

35.     Eventually the dog released Mr. Booker's leg from his locked jaws, and as he released the dog took another bite at Mr. Booker's foot.

36.     Mr. Booker was defenseless when the Officers had his arms restrained and had him on the ground, during the assaults by the Officers and the dog.

37.     Mr. Booker screamed out in pain from the assaults by the Officers and the dog.

38.     The police K9 was not used according to Lynchburg Police Department Policy.

39.     After the assault, and while Mr. Booker was being taken to the hospital to be treated for his injuries, Officer Schartiger conducted a field test on the material in the mesh bag he allegedly saw and thought was methamphetamines, and his field test allegedly yielded positive results.

40.     However, when later tested by the Department of Forensic Science it was confirmed that the material was not a drug at all.

41.     In fact, there were no drugs found in Mr. Booker's car what so ever.

42.     Mr. Booker never threatened any of the Officers or K9, made no aggressive movements toward any of the Officers, made no furtive gestures, and no physical movements that would suggest to the Officers that Mr. Booker was attempting, willing, or intending to inflict harm on any person or escape.

43.     Despite the foregoing facts, the Officers physically detained Mr. Booker, and while he begged and pleaded for mercy, continuously beat Mr. Booker with police batons multiple times, choked Mr. Booker, and instructed the K9 to attack Mr. Booker. All defendants meaningfully participated in the detention of and use of force against Mr. Booker by either directly using ***force*** against Mr. Booker, going hands on with Mr. Booker during the incident, ordering another Defendant to use force against Mr. Booker, providing the means

by which force was used against Mr. Booker (baton, fist, K9), restraining Mr. Booker, and giving orders to Mr. Booker. All Defendants also failed to instruct any other Defendant not to use force against Mr. Booker, to provide aid to Mr. Booker, and failed to intervene to stop the force being used against Mr. Booker

44.    As a result of Defendants' use of excessive force, Mr. Booker suffered multiple strains, sprains, wounds, gashes, contusions and abrasions. The use of force against Mr. Booker was excessive and objectively unreasonable under the circumstances, especially because Mr. Booker had no firearms on his persons, and did not pose an immediate threat of death or serious bodily injury to anyone at any time immediately prior to or during the use of force.

45.    After being bitten, choked, combatively restrained, and violently beaten, Mr. Booker experienced pain and suffering from his injuries. Mr. Booker was bleeding, and in obvious and critical need of emergency medical care and treatment. Defendants did not timely summon medical care. The delay of medical care to Mr. Booker caused extreme physical and emotional pain and suffering, and was a contributing cause of Mr. Booker's injuries. Mr. Booker's injuries required emergency treatment at Lynchburg General Hospital.

46.    Evidence that Mr. Booker was severely beaten by Lynchburg Police Officers, placed in an illegal choke hold, and repeatedly, and excessively struck with a baton while being bitten repeatedly by a police K-9, became clear as this case worked its way through Lynchburg Circuit Court.

47.    This horrific beating that occurred during the afternoon of July 18, 2018, was witnessed by several co ncerned residents of the community.

48.   The incident was also captured on body-cam footage worn by the Lynchburg City Police Officers who administered the brutal beating against Mr. Larry Anthony Booker.

49.   The actions of the Defendants related to Mr. Booker were done in a wanton, culpable, and grossly negligent manner.

50.   The actions were undertaken in conscious disregard of Mr. Booker's rights, and with a reckless indifference to the consequences of their actions, of which they were aware, that the result would cause injury to Mr. Booker.

51.   At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

52.   On or about August 1, 2018, Plaintiff, Mr. Larry Booker sent a timely Notice of Claim to all relevant parties for damages with the City of Lynchburg in substantial compliance with Virginia Code Section 15.2-209.

## COUNT I - USE OF EXCESSIVE FORCE
### (All Defendants)

53.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

54.   Immediately prior to the assault upon Mr. Booker he was being detained related to an alleged traffic infraction and driving on a suspended operator's license.

55.   Mr. Booker was searched upon exiting the vehicle, and therefore posed no immediate threat to the Defendants or others while he was standing at the rear of his vehicle.

56.   Mr. Booker made no threatening actions or statements; the Defendants had no reason to believe Mr. Booker was currently armed, and Mr. Booker had no actual physical contact with the Defendants prior to them taking him to the ground from behind.

57.   Mr. Booker was not actively resisting arrest or attempting to evade arrest by flight when the Defendants took him to the ground, choked him, ordered the canine to attack him, and beat him numerous times with the police baton.

58.   Upon information and belief, defendants L.I. Schartiger, J.H. Bragg, and N. Godsie, intentionally and maliciously beat, injured, and harmed Mr. Booker without provocation or reason, resulting in serious injuries, including, but not limited to, a left and right ankle sprain, right and left wrist strain, a right and left forearm strain, multiple contusions and hematomas from animal bites and a right and left flank abrasion, requiring medical attention and treatment.

59.   This use of excessive force was deliberate and intentional and was not objectively reasonable under the circumstances. The force was applied maliciously and sadistically for the very purpose of causing harm, and inflicting unnecessary and wanton pain and suffering.

60.   Mr. Booker posed no immediate threat to the safety of the officers or others.

61.   By using excessive force on Mr. Booker, defendants Schartiger, Bragg, and Godsie deprived Mr. Booker of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under *42 U.S.C. Sec. 1983,* including, without limitation, rights guaranteed by the Fourteenth Amendment to the United States Constitution.

62.   Defendant, Chief of Police, is responsible for the training, supervision and conduct of the officers employed by his office. He is responsible for providing training regarding the use of appropriate force upon the arrest and detention of individuals, and further is responsible for assuring that the officers employed by his office do not use excessive and unreasonable

force in the arrest and detention of individuals. Defendant Chief of Police, with final policy-making authority for the Lynchburg City Police Department, was responsible for violation of Plaintiff's Constitutional rights.

63.   The City was responsible for assuring that the Lynchburg City Police Department did not violate the rights of pretrial detainees by using excessive force, and for assuring that individuals employed in the Lynchburg City Police Department were properly trained and supervised regarding the use of excessive force.

64.   The City and Lynchburg City Police Department were personally involved in and responsible for the excessive force used against Mr. Booker in that:

   a.   They created a policy and custom, and they allowed the continuance of a policy and custom, under which detainees and individuals subject to arrest would be subjected to the use of excessive and unreasonable force; and

   b.   They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein.

65.   The gross indifference by the City and the Lynchburg City Police Department to the conduct of officers, which includes repeated failures to follow policy and procedures, unnecessary use of excessive force, roughness during arrest, and intimidation of suspects during arrests, led to the violation of Mr. Booker's constitutionally protected rights. The failure of the Chief of Police and the Lynchburg City Police Department to take corrective action after learning of prior instances of the officers' misconduct, and the failure to properly train the officers, led to these violations.

66.   All defendants acted pursuant to the policies, regulations and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy

or were pursuant to a governmental custom, usage or practice of the Lynchburg City Police Department and Lynchburg Chief of Police.

67.     These actions by defendants Schartiger, Bragg, and Godsie were of a malicious and intentional nature and manifested a deliberate indifference to the constitutional rights of Mr. Booker.

68.     Mr. Booker's constitutional rights at issue were clearly established at the time of the violations by the Defendants.

69.     Defendants acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Booker of his constitutional rights secured by *42 U.S.C. Sec. 1983* and by the *Fourteenth Amendment* to the United States Constitution.

70.     As a direct and proximate result of the Defendants' actions, Mr. Booker has suffered and will continue to suffer physical pain and suffering, physical injury, medical expenses, humiliation, psychological pain, suffering and mental anguish, and other damages.

## COUNT II - CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (All Defendants)

71.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

72.     Defendants acted jointly and in concert to violate Mr. Booker's civil rights.

73.     All defendants took some overt act in furtherance of the conspiracy, and all defendants agreed to act together to violate Mr. Booker civil rights.

74.     Namely, each defendant either actually participated in the use of excessive force, or witnessed the excessive force but failed to intervene, or acquiesced in the actions taken or covered up the actions even after Mr. Booker filed a formal Notice of Claim regarding the officers' actions.

75. All defendants failed to intervene, or acquiesced to the officer defendants' version of the event to cover up an assault to Mr. Booker, to include false information in the report of the investigation, to conducting an inadequate investigation of the July 18, 2018 incident, intimidating Mr. Booker following the incident while he was under arrest, injured, and on pain medication, and to refuse to release the investigative report or other documents associated with the July 18, 2018, incident to Mr. Booker. All defendants had agreed, prior to July 18, 2018, that instances of the use of excessive force by the employees of the Lynchburg City Police Department would be covered up by inadequate investigations.

76. The acts and omissions of the defendants proximately caused Mr. Booker's suffering, pain and injuries.

77. The defendants knowingly participated in a conspiracy to violate Mr. Booker's civil rights, thus subjecting him to pain, physical and mental injury in violation of his rights under the Fourteenth Amendment to the United States Constitution.

## COUNT III - ASSAULT AND BATTERY
### (All Defendants)

78. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

79. Upon information and belief, defendants Schartiger, Bragg, and Godsie repeatedly touched Mr. Booker in a vicious, rude, insulting, brutal, unwanted and offensive manner.

80. Upon information and belief, defendants Schartiger, Bragg, and Godsie without provocation or excuse twisted Mr. Booker's arms behind his back, forced him to the ground, struck him repeatedly with fists and batons, kicked and punched him in the head, choked him, and allowed the K-9 to continuously bite Mr. Booker's body.

81. The touching was unsolicited by Mr. Booker, unwarranted, and inappropriate.

82.   The unwanted touching was not consented to, excused or justified. Furthermore, the officer defendants Schartiger, Bragg, and Godsie engaged in acts intending to cause harmful or offensive contact with Mr. Booker or to create a reasonable apprehension of an immediate, unwanted touching for Mr. Booker. These actions constitute assault and battery, put Mr. Booker in fear of, and apprehensive of being struck, bit and physically harmed.

83.   At the time the tortious conduct that injured Plaintiff was committed, defendants Schartiger, Bragg, and Godsie were acting within the scope of their employment duties and their tortious conduct was therefore imputable to defendants Lynchburg City Police Department and Lynchburg City Chief of Police.

84.   The Chief of Police's failure to properly train and supervise Officer Defendants Schartiger, Bragg, and Godsie was a proximate cause of Mr. Booker's injuries.

85.   The tortious conduct that was committed by Defendants Schartiger, Bragg, and Godsie which injured Plaintiff as described above, was subsequently ratified by the Lynchburg City Police Department, and Lynchburg City Chief of Police and thus, such tortious conduct is imputable to defendants Lynchburg City Police Department and Lynchburg City Chief of Police.

86.   The actions of the Defendants were malicious, intentional and amounted to extreme and outrageous conduct, causing Plaintiff to suffer emotional distress necessitating medical treatment and consequent medical expenses.

87.   As a proximate result of the Defendants' actions as set forth above, Plaintiff has suffered and will continue to suffer, physical pain and suffering, physical injury, medical expenses, humiliation, psychological pain, suffering and mental anguish, and other damages.

## COUNT IV - SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983)
(By Defendants: Schartiger, Bragg, and Godsie)

88.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

89.     Mr. Booker had a cognizable interest under the Due Process Clause of the Fourteenth
        Amendment of the United States Constitution to be free from state actions that deprive him
        of life, liberty, or property in such a manner as to shock the conscience, including but not
        limited to unwarranted state interference in Plaintiff's familial relationship with his family.

90.     The aforementioned actions of Defendants Schartiger, Bragg, and Godsie, along with other
        as of yet undiscovered conduct, shock the conscience, in that they acted with deliberate
        indifference to the constitutional rights of Mr. Booker with the purpose to harm, unrelated
        to any legitimate law enforcement objective.

91.     As a direct and proximate result of these actions, Mr. Booker experienced pain and
        suffering. Defendants thus violated the substantive due process rights of Mr. Booker.

92.     As a direct and proximate cause of the acts of Defendants, Mr. Booker suffered emotional
        distress, mental anguish, and pain.

93.     As a result of their misconduct, Defendants Schartiger, Bragg, and Godsie are liable for
        Mr. Booker's injuries, either because they were integral participants in the wrongful
        detention and arrest, use of excessive force, and denial of medical care, or because they
        failed to intervene to prevent these violations.

94.     Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for
        the rights and safety of Mr. Booker, and therefore warrant the imposition of exemplary and
        punitive damages as to the individual Defendants.

95.     Mr. Booker also seeks attorney fees under this claim.

## COUNT V - MUNICIPAL LIABILITY-RATIFICATION (*42 U.S.C. § 1983*)
### (By Defendants: the CITY, Schartiger, Bragg, and Godsie)

96.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

97.    Defendants Schartiger, Bragg, and Godsie, acted under color of law.

98.    The acts of the individual defendants deprived Mr. Booker of his particular rights under the United States Constitution.

99.    Upon information and belief, the City, acting under color of law, who had final policymaking authority concerning the acts of the individual Defendants, ratified the acts of the defendants' acts and the bases for them. Upon information and belief, the City knew of and specifically approved of the individual defendants' acts.

100.    Upon information and belief, the City has determined (or will determine) that the acts of the individual defendants were "within policy."

101.    Because of the aforementioned acts and omissions, Mr. Booker suffered loss of his constitutional rights, pain and suffering.

102.    Accordingly, the City, Schartiger, Bragg, and Godsie, each are liable to Plaintiff for compensatory damages under *42 U.S.C. § 1983*.

103.    Mr. Booker seeks punitive damages and attorney's fees under this claim.

## COUNT VI - MUNICIPAL LIABILITY – FAILURE TO TRAIN (*42 U.S.C. § 1983*)
### (By Plaintiff against the CITY, Police Chief, Schartiger, Bragg, and Godsie)

104.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

105.    Defendants Schartiger, Bragg, and Godsie acted under color of law.

106.    The acts of the individual defendants deprived Mr. Booker his particular rights under the United States Constitution.

107.  The training policies of the City were not adequate to train its officers to handle the usual and recurring situations with which they must deal. This includes training with respect to tactics, handling situations utilizing the K9 element, and the use of force.

108.  The City was deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, handling situations utilizing the K9 element, and the use of force.

109.  The failure of the City to provide adequate training caused the deprivation of Mr. Booker's rights by the individual defendants; that is, Defendants' failure to train is so closely related to the deprivation of Mr. Booker's rights as to be the moving force that caused the ultimate injury.

110.  On information and belief, the City failed to train the individual defendants properly and adequately, including training with respect to tactics, handling situations, utilizing the K9 element, and the use of force.

111.  By reason of the aforementioned acts and omissions, Mr. Booker has endured mental anguish, pain, suffering, and loss of enjoyment of life.

112.  Mr. Booker also seeks punitive damages and attorney fees under this claim.

## COUNT VII - MUNICIPAL LIABILITY – Unconstitutional Custom or Policy (*42 U.S.C. § 1983*)
(Defendants: the CITY, Schartiger, Bragg, and Godsie)

113.  Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

114.  The individual defendants, including Schartiger, Bragg, and Godsie, acted under color of law.

115.  The individual defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the City.

116.   On information and belief, the individual defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Mr. Booker's vicious assault and battery, including animal bites.

117.   The City, Schartiger, Bragg, and Godsie, together with other policymakers of the City and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

   a.   Using excessive force, and unnecessary and non-deadly force;

   b.   Providing inadequate training regarding the use of force;

   c.   Employing and retaining as police officers individuals such as Defendants Schartiger, Bragg, and Godsie, whom The City at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

   d.   Inadequately supervising, training, controlling, assigning, and disciplining the City officers, and other personnel, including Defendants Schartiger, Bragg, and Godsie, whom the City knew or in the exercise of reasonable care should have known, had the aforementioned propensities and character traits;

   e.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by the City officers, Defendants Schartiger, Bragg, and Godsie;

   f.   Failing to adequately discipline the City police officers, including Defendants Schartiger, Bragg, and Godsie, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion

to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g.    Announcing that use of excessive force is "within policy," including shootings that were later determined in court to be unconstitutional;

h.    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

i.    Maintaining a policy of inaction and an attitude of indifference towards use of excessive force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in beating of unarmed people;

j.    Providing inadequate training regarding handling situations with unarmed people.

118.    By reason of the aforementioned acts and omissions, Mr. Booker has suffered pain and anguish, and loss of enjoyment of quality of life.

119.    Defendants, the City, Schartiger, Bragg, and Godsie, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the

foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Booker, and other individuals similarly situated.

120.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful  acts, including the use of animals to harm citizens, Schartiger, Bragg, and Godsie acted with intentional, reckless, and callous regard to Mr. Booker's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants the City, Schartiger, Bragg, and Godsie were affirmatively linked to and were a significantly influential force behind the injuries of Mr. Booker.

121.    Accordingly, Defendants the City, Schartiger, Bragg, and Godsie each are liable to Mr. Booker for compensatory damages under *42 U.S.C. § 1983.*

122.    Mr. Booker seeks punitive damages and attorneys' fees under this claim.

## COUNT VIII - NEGLIGENCE
### (All Defendants)

123.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

124.    Police officers have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, not using unnecessary force, using less than lethal options, and only using deadly force as a last resort.

125.    In doing the things alleged herein, defendants and each of them acted negligently.

126.    Additionally and/or alternatively, in doing the things herein alleged, defendants, and each of them, acted with such complete indifference to plaintiff as to constitute an utter disregard of caution amounting to a complete neglect of the safety and rights of plaintiff as to shock fair-minded people.

127.    Thus, the actions of defendant, and each of them, constitute gross negligence.

128.   Additionally and/or alternatively, in doing the things herein alleged, defendants, and each of them, acted consciously in utter disregard of plaintiff's rights or with reckless indifference to the consequences to plaintiff when doing the things herein alleged.

129.   Defendants, and each of them, were aware of their conduct and were also aware, from their knowledge of circumstances and conditions existing at that time, which their conduct would probably result in harm to plaintiff.

130.   As a result of the foregoing actions of defendants, and each of them, plaintiff suffered the injuries and incurred the damages described, inclusive, supra.

131.   In doing the things alleged herein, defendants, and each of them, acted willfully, wantonly, intentionally, and in conscious disregard of plaintiff's rights. Said conduct justifies the award of punitive damages.

132.   Defendants Schartiger, Bragg, and Godsie breached this duty of care. Upon information and belief, the actions and inactions of Defendants Schartiger, Bragg, and Godsie were negligent and reckless, including but not limited to:

   a.   the failure to properly and adequately assess the need to detain, arrest, restrain, or use force or excessive force against Mr. Booker;

   b.   the negligent tactics and handling of the situation with Mr. Booker, including negligence occurring immediately prior to the use of force, and negligent tactics in handling a situation of an arrest;

   c.   the negligent detention, arrest, and use of excessive force against Mr. Booker;

   d.   the failure to properly train and supervise employees, both professional and non-professional, including Schartiger, Bragg, and Godsie;

     e.   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Mr. Booker;

     f.   the negligent handling of evidence and witnesses; and

     g.   the negligent communication of information during the incident.

133.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Booker was caused to suffer injuries and severe pain and suffering. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff suffered emotional distress and mental anguish.

134.   The City is vicariously liable for the wrongful acts of Defendants.

135.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Booker was caused to suffer injuries and severe pain and suffering. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff suffered emotional distress and mental anguish.

136.   The City is vicariously liable for the wrongful acts and injuries caused by its employees within the scope of the employment if the employees' acts would subject him or her to liability.

## COUNT IX - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

137.   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

138.   The actions of the Lynchburg City Police Officers were intentional and reckless as Mr. Booker suffered physical injuries from the beating that was administered. Mr. Booker, as mentioned in the complaint, was bitten repeatedly by a police K-9 while being choked out from behind by an officer.

139. The Defendants knew, or should have known, that their actions would cause Mr. Booker serious physical and emotional injury.

140. The conduct was extreme, outrageous and intolerable and against human decency, public policy, and acceptable police training standards.

141. Mr. Booker's injuries, both physical and psychological are the direct result of the purposeful and intentional conduct of the Lynchburg City Police Officers who meant to inflict as much physical and mental anguish as possible during the events that took place of which this complaint is based.

## COUNT X - MALICIOUS PROSECUTION
### (All Named Defendants)

142. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

143. On or about the 18th day of July 2018, defendants falsely, maliciously and without any reasonable or probable cause whatsoever, arrested plaintiff, Larry Anthony Booker, on multiple charges, including: (1) Maliciously cause bodily injury to K-9 owned by law enforcement under Va. Code §18.2-144.1; (2) Possess a firearm while possessing Schedule I or II controlled substance with the intent to distribute under Va. Code §18.2-308.4(c); (3) Possession of Schedule I or II controlled substance under Va. Code §18.2-250; (4) Assault and battery of Officer N. Godsie under Va. Code §18.2-57(f); (5) Possess ammunition for a firearm after being convicted of a felony under Va. Code §18.2-308.2(d); (6) Possession of a firearm after being convicted of a felony under Va. Code §18.2-308.2; (7) Possession of a firearm after being convicted of a felony within the prior ten years under Va. Code §18.2-308.2; (8) Possession of a Schedule I or II controlled substance with the intent to distribute as a third offense under Va. Code §18.2-248; (9) Resisting arrest under Va. Code

§18.2-460; (10) Driving suspended under Va. Code §46.1-301; and (11) Obstruction of justice under Va. Code §18.2-460.

144.   Pursuant to the arrest warrant issued against plaintiff, he was brought before the Court to appear for a hearing at the General District Court for the City of Lynchburg, Virginia.

145.   Upon the preliminary hearing of the charges against the Plaintiff, and after the Court heard all the evidence presented by the Commonwealth, many of the charges were *nolle prossed* or dismissed.

146.   Defendants instigated and procured, or allowed through omission to be instigated and procured, this prosecution of the Plaintiff falsely, maliciously, with intent to injure the Plaintiff's reputation in the community and with full knowledge that the charges were without any reasonable or probable cause whatsoever.

147.   Defendants instigated and procured, or allowed through omission to be instigated and procured, the prosecution of the Plaintiff, obtaining probable cause, in part, to search his vehicle by pre-textual assertion that the Plaintiff had left out in plain view a substance that appeared to be Crystal Methamphetamine.

148.   When Arko, the police K-9 was introduced to the scene by Officer Godsie, the handler of such K-9, Officer Godsie claimed that Arko had alerted on the car by giving a signal that "only he knew." The area of the alert yielded no drugs, but the alleged K-9 alert gave police the pretext they needed to keep looking until "we find something."

149.   Plaintiff contends no such alert was ever given by Arko, and that other efforts by police to implicate Mr. Larry Anthony Booker were done in concert to manufacture evidence of any kind against the Plaintiff.

150.   Plaintiff informed the police the substance was only laundry detergent.

151.   Upon field testing the substance, and after speaking to the Plaintiff, the results of which were told to Plaintiff by police, were said to be positive for Methamphetamine.  However, the Department of Forensic Science later confirmed that the material was not drugs at all.

152.   So the K-9 allegedly signaled to a car with no drugs in it at all, and the police test of the material found in the car allegedly gave a false positive test result.

153.   In fact, the alleged K-9 alert, and the field test, were pretexted to manufacture probable cause and to maliciously charge Mr. Booker in light of the beating he endured at the hands of the defendants.

154.   The Officers knew that the K-9 was not reliable in giving alleged alerts, and knew that the material seen in the car were not drugs.

155.   The Defendants also knew that Mr. Booker did not violate the law related to any actions with the K-9, yet still charged him with assault on a law enforcement animal.  The charge was later dismissed.

156.   Mr. Booker was also charged with two counts of possession of a firearm by a convicted felon, one of which was dismissed.

157.   Many of the charges against Mr. Booker were initiated in an attempt to affect the outcome of any later action against the officers related to the violations of Mr. Booker's Constitutional rights.

158.   By reasons of Defendants' actions, Plaintiff has been greatly injured in his credit and reputation and has been brought into public disrepute among the members of the community; has been required to spend substantial time away from his family and to expend substantial sums of money to defend against these wholly frivolous charges; has

been caused much anxiety, physical and mental anguish; and has been made the object of public scorn, ridicule and humiliation.

## COUNT XI-NEGLIGENT RETENTION

### (The Police Chief, The Lynchburg Police Department, The City)

159. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

160. Officer Godsie has a record of interactions with citizens where he was accused of using excessive force, being untruthful, violating constitutional rights of citizens, and having bad moral character.

161. Officer Godsie was not only allowed to remain an Officer with the Lynchburg Police Department, but was given the responsibility of running a K-9 unit where his trustworthiness would be at issue in interpreting the actions of the K-9.

162. Despite having adequate notice of the said conduct of Officer Godsie against the citizens of Lynchburg, the Commonwealth of Virginia, and the United States of America the Defendants, the Police Chief, Lynchburg City Police Department, and the City continued to employ and retain Godsie. Defendants, the Police Chief, Lynchburg City Police Department, and the City knew and/or should have known, and had reason to know that Godsie posed a significant and foreseeable danger of harm to the Plaintiff and others.

163. Defendants owed a duty to Plaintiff to provide a safe and civilized environment free of excessive force, including not limited  choking, biting, being beaten continuously with a baton, kicking and  punching to the head.

164. Defendants breached that duty owed to Plaintiff when they failed to adequately train, supervise, discipline or in any other way protect the Plaintiff from Officer Godsie.

165.   As a direct result of Defendants' retention of Godsie, with said knowledge, Godsie did commit acts of harassment, assault, battery, and inflicted intentional acts of emotional distress upon the Plaintiff.

166.   As a direct and proximate result of Defendants' retention of Godsie, Plaintiff suffered damages including, but not limited to physical and psychiatric pain, humiliation and emotional distress, and other damages to Plaintiff's personal reputation, Plaintiff's professional reputation and adversely affected Plaintiff's earning capacity.

167.   That the Defendants' conduct was grossly negligent, deliberate, malicious, willful, and consequently inflicted economic and other harm on Plaintiff's well-being.

168.   That Plaintiff has suffered damage to his reputation, has been left fearful of all authority, and inflicted humiliation and embarrassment and other emotional and physical pain and suffering.

169.   The Defendants negligently placed Godsie, an unfit person, in an employment situation involving an unreasonable risk of harm to others.

**WHEREFORE**, Plaintiff, Larry Anthony Booker requests damages as follows:

A.   Against all defendants, jointly and severally, for compensatory damages in the amount of two million dollars ($ 2,000,000.00);

B.   Against all defendants, jointly and severally, for punitive damages in the amount of three hundred and fifty thousand dollars ($350,000);

C.   Declaratory relief that the policies, practices, procedures, conditions and customs of the defendant violate the Plaintiff's right to be free from the use of excessive as secured to him by the Fourteenth Amendment to the United States Constitution;

D.  Injunctive relief enjoining the defendants from engaging in the use of excessive force and other actions which violated the Plaintiff's rights under the *Fourteenth Amendment* to the United States Constitution;

E.  For costs and reasonable attorneys' fees pursuant to 42 U.S.C. Sec. 1988; and

F.  For such further relief as the Court deems just and proper.


**A JURY TRIAL IS DEMANDED**




/s/ Carlos A. Hutcherson
Carlos A. Hutcherson, Esq. (VSB#83100)
Hutcherson Law, PLC
3610 Campbell Avenue
Lynchburg, Virginia 24501
Telephone:     (434) 455-8100
Facsimile:     (888) 351-0363
c.hutchersonesq@yahoo.com
*Counsel for the Plaintiff*




/s/ Steven D. McFadgen, Sr.
Steven D. McFadgen, Sr., Esq. (VSB#83273)
McFadgen Law, PLC
3831 Old Forest Road, Suite 6
Lynchburg, Virginia  24501
Telephone:     (434) 385-4579
Facsimile:     (888) 873-1048
muchmorelaw@gmail.com
*Counsel for the Plaintiff*