CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/22/2020

JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| LARRY ANTHONY BOOKER,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF LYNCHBURG, *et al.*,<br><br>*Defendants*. | Case No. 6:20-cv-00011<br><br><u>MEMORANDUM OPINION</u><br><br>Judge Norman K. Moon |

## INTRODUCTION

Plaintiff Larry Anthony Booker has filed an eleven-count complaint against Defendants City of Lynchburg, the Lynchburg City Chief of Police, Lynchburg City Police Department, and (in both their individual and official capacities) Police Officers Luke Schartiger, Jonathan Bragg, and Nathan Godsie. Pending before the Court is Defendants' joint motion to dismiss the majority of claims in Plaintiff's complaint. Dkt. 7.

Defendants seek dismissal of all claims against the City of Lynchburg, Lynchburg City Police Department, and the Lynchburg City Chief of Police. However, they seek dismissal of only the following claims against Officers Schartiger, Bragg, and Godsie (the "Police Officer Defendants"): violation of Plaintiff's Fourteenth Amendment right to substantive due process, pursuant to 42 U.S.C. § 1983 (Count IV); simple negligence (Count VIII); intentional infliction of emotional distress (Count IX); and municipal liability claims (Counts V, VI, and VII). Defendants have not moved for dismissal of the following claims against the Police Officer Defendants in their individual capacities: excessive use of force (Count I), conspiracy to violate civil rights (Count II), assault and battery under Virginia law (Count III), gross negligence (Count VIII), and malicious

1

prosecution (Count X). The Court will grant in full Defendants' motion to dismiss certain claims in Plaintiff's complaint.

## I.   ALLEGED FACTUAL BACKGROUND

At or around 3:25 P.M. on July 18, 2018, at the intersection of Taylor Street and 16th Street in Lynchburg, Virginia, Dkt. 1 at ¶ 11, Defendants Lynchburg City Police Officers Luke Schartiger and Jonathan Bragg were on patrol when they pulled over Plaintiff Larry Anthony Booker for a minor traffic violation, *id.* at ¶¶ 12–13.[1] Plaintiff complied with Schartiger and Bragg's stop and admitted to them that he did not have a driver's license. *Id.* at ¶ 14. Schartiger and Bragg then requested to search Plaintiff's vehicle, and Plaintiff declined their request. *Id.* at ¶ 15. Plaintiff was subsequently instructed to exit the vehicle and stand with Bragg while Schartiger claimed to draft a summons for Driving While Suspended. *Id.* at ¶ 16. Immediately upon exiting his vehicle, Plaintiff received a pat down and his person was searched. *Id.* at ¶ 17. While Plaintiff stood with Bragg, Schartiger began to search Plaintiff's vehicle, claiming that he could see packaging that was consistent with drug packaging and drugs inside the vehicle. *Id.* at ¶ 18. Plaintiff at some point informed the officers that the substance was laundry detergent. *Id.* at ¶ 150.

Schartiger next advised K-9 Officer Nathan Godsie to "run" Plaintiff's vehicle while Schartiger began to write a summons near Plaintiff, as Schartiger claimed that Plaintiff was exhibiting signs consistent with a desire to flee the scene. *Id.* at ¶¶ 20–21. While running the vehicle, Godsie indicated that the dog examining the vehicle "alerted" at the trunk. *Id.* at ¶ 22. Godsie later stated that this "alert" was signaled by the dog's "increased respirations" and "detailing the bottom of the trunk seam on his own." *Id.* at ¶ 30. Further, Godsie at some point

---

[1] Plaintiff alleges that the incident was captured on body-cam footage who allegedly arrested and beat Plaintiff. Plaintiff did not include any such footage as an exhibit to his complaint. Dkt. 1 at ¶ 48.

claimed that the dog gave a signal that "only he knew." *Id.* at ¶ 148. Although the area of alert did not yield any drugs, Plaintiff alleges that the dog's alert "gave police the pretext they needed to keep looking until 'we find something.'" *Id.* Godsie later "admitted that [the dog] would detect the smell of drugs more than a couple of days after drugs have been removed from a location." *Id.* at ¶ 31.[2]

Upon the dog's alert, Schartiger, Bragg, and Godsie immediately attempted to detain Plaintiff. *Id.* At the time, Plaintiff was not told that he was placed under arrest, but rather he was instructed to put his hands behind his back and to stop resisting. *Id.* at ¶ 23. Bragg and Schartiger then grabbed Plaintiff's arms while Godsie stood in front of Plaintiff, threatening him with his dog. *Id.* at ¶ 24. Schartiger then grabbed both of Plaintiff's legs in an effort to take him "down" to "affect [*sic*] an arrest." *Id.* at ¶ 25. When Plaintiff hit the ground, Bragg's arm was around his neck—choking him, *id.* at ¶ 43—and Bragg had "one arm pent up" while Schartiger held Plaintiff's other arm. *Id.* at ¶ 26. At about this time, Godsie "had the dog attack" Plaintiff. *Id.* at ¶ 28. While Bragg and Schartiger held Plaintiff to the ground, Godsie's dog was "biting or locked onto his leg." *Id.* at ¶ 33. Godsie struck Plaintiff's legs over a dozen times while Bragg struck Plaintiff several times in the arm and head, *id.*—at some point using police batons, *id.* at ¶ 43. Godsie's dog did not release Plaintiff's leg even after Plaintiff had been hand cuffed. *Id.* at ¶ 34. Even after Godsie raised the dog and Plaintiff's leg into the air and gave him several commands, in an apparent attempt to obtain a release, the dog would not unlock its jaws from Plaintiff's leg. *Id.* at ¶ 34. After the dog's eventual release from Plaintiff's leg, the dog bit again at Plaintiff's foot. *Id.* at ¶ 35. Godsie later stated that the dog was "trained to protect him and when people are close [the

---

[2] Plaintiff at various points in the complaint indicates that certain officers "testified" as to certain facts alleged in the complaint. *See, e.g.*, Dkt. 1 at ¶¶ 27–30, 32. Plaintiff does not indicate when, where, or how such testimony was given.

dog] is trained to bite." *Id.* at ¶ 29. Throughout the entire episode, Plaintiff repeatedly asked during the arrest what the officers were doing and stated that he was not resisting. *Id.* at ¶ 27.

After some amount of delay, *id.* at ¶ 45, Plaintiff was then taken to the hospital to be treated for his injuries. *Id.* at ¶ 39. Plaintiff suffered "multiple strains, sprains, wounds, gashes, contusions and abrasions." *Id.* at ¶ 44. Schartiger conducted a field test on the material that he supposedly saw in the vehicle and which prompted the vehicle search, believing it to be methamphetamines. *Id.* Plaintiff does not identify what type of field test was conducted. While the field test was purported to have yielded a positive result for a controlled substance, *id.*, the Department of Forensic Science later determined that the substance was not a drug. *Id.* at ¶ 40. No drugs were ever found in Booker's car. *Id.* at ¶ 41.

Plaintiff alleges that he "never threatened any of the Officers or K9, made no aggressive movements toward any of the Officers, made no furtive gestures, and no physical movements that would suggest to the Officers that [he] was attempting, willing, or intending to inflict harm on any person or escape." *Id.* at ¶ 42. Further, Plaintiff had no firearms on his person. *Id.* at ¶ 44.

On or about the day of his arrest, Defendants brought multiple criminal charges against Plaintiff, including (1) maliciously causing bodily injury to K-9 owned by law enforcement, pursuant to Va. Code § 18.2-144.1; (2) possession of a firearm while possessing a Schedule I or II controlled substance with the intent to distribute, pursuant to Va. Code § 18.2-308.4(c); (3) possession of a Schedule I or II controlled substance, pursuant to Va. Code § 18.2-250; (4) assault and battery of Officer N. Godsie, pursuant to Va. Code § 18.2-57(f); (5) possession of ammunition for a firearm after being convicted of a felony, pursuant to Va. Code § 18.2-308.2(d); (6) possession of a firearm after being convicted of a felony, pursuant to Va. Code § 18.2-308.2; (7) possession of a firearm after being convicted of a felony within the prior ten years, pursuant to Va.

Code § 18.2-308.2; (8) possession of a Schedule I or II controlled substance with the intent to distribute as a third offense, pursuant to Va. Code § 18.2-248; (9) resisting arrest, pursuant to Va. Code § 18.2-460; (10) driving suspended, pursuant to Va. Code § 46.1-301; and (11) obstruction of justice, pursuant to Va. Code § 18.2-460. *Id.* at ¶ 145. In the General District Court for the City of Lynchburg, Virginia, many, but not all, of the charges against him were *nolle prossed* or dismissed. *Id.* at ¶ 145.

Plaintiff alleges, without further factual description, that Godsie has a "record of interactions with citizens where he was accused of using excessive force, being untruthful, violating constitutional rights of citizens, and having bad moral character." *Id.* at ¶ 161. Regardless, Plaintiff alleges, Godsie was given the responsibility of running a K-9 unit. *Id.* Plaintiff also alleges that the City had a custom, practice, and policy of, *inter alia*, "using excessive force, and unnecessary and non-deadly force," "providing inadequate training regarding the use of force," "failing to adequately discipline the City police officers, including Defendants Schartiger, Bragg, and Godsie, for the above-referenced categories of misconduct," and "maintaining a policy of inaction and an attitude of indifference towards use of excessive force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in beating of unarmed people." *Id.* at ¶ 117.

On March 17, 2020, Plaintiff brought his complaint against the City of Lynchburg, the Lynchburg City Chief of Police, the Lynchburg City Police Department, and, in their individual and official capacities, Police Officers Luke Schartiger, Jonathan Bragg, and Nathan Godsie, seeking $2,000,000 in compensatory damages, $350,000 in punitive damages, declaratory relief, injunctive relief, and costs and reasonable attorney's fees. *Id.* at 27–28. The Defendants then filed

a joint motion to dismiss most of the claims against them, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 7. The motion has been fully briefed and is ripe for disposition.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id*. at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III.   ANALYSIS

At the outset, the Court notes that suits against public officials in their official capacity are treated as actions against that official's public employer. *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (1997). As Plaintiffs have sued the City of Lynchburg in this action, the official capacity claims against the Police Officer Defendants and Chief of Police[3] are considered duplicative and the Court will dismiss those official capacity suits for that reason. The sufficiency of the suits against these Police Officer Defendants in their individual capacities are analyzed in the subsection that follows.

Further, the parties have agreed that the Lynchburg City Police Department is not an entity subject to suit under § 1983 or under state law, because it is an operating division of the City of Lynchburg and thus has no legal existence separate and apart from the City. The parties are correct. Whether a governmental body is an entity capable of being sued is a matter of state law, *Avery v. Burke Cty.*, 650 F.2d 111, 113–14 (4th Cir. 1981) (citing Fed. R. Civ. P. 17(b)(1)), and Virginia law does not recognize municipal police departments as capable of suit, *Thompson v. City of Danville*, No. 4:10-cv-00012, 2011 WL 2174536 (W.D. Va. June 3, 2011) *aff'd* 457 F. App'x 221 (holding that "[l]ocal police and sheriff's departments in Virginia are "non suis juris," meaning

---

[3] Plaintiff simply identifies the "Lynchburg City Chief of Police" as a Defendant, without citing that official's name in the Complaint. Although Plaintiff does not specify whether the Chief of Police has been sued in his individual or official capacity, the Court concludes that because Plaintiff has filed suit against the official simply by listing his title, he has sued the Chief of Police in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (setting forth distinction between individual and official capacities). Further, the Court takes judicial notice of the fact that the Chief of Police in Lynchburg has changed since these events are alleged to have taken place on July 18, 2018. Without further clarification on the face of the complaint, the Court declines to assume which Chief of Police the Plaintiff may have sued in his individual capacity.

they simply do not have the capacity to be sued"). As such, the Lynchburg City Police Department will be terminated as a defendant to this action on that basis.

The Court will begin by examining the challenged claims against the Police Officer Defendants. It will then examine the claims against the City of Lynchburg.

### A. Police Officer Defendants

Defendants seek dismissal of only the following claims against the Police Officer Defendants: violation of Plaintiff's Fourteenth Amendment right to substantive due process, pursuant to § 1983 (Count IV); simple negligence (Count VIII); intentional infliction of emotional distress (Count IX); and municipal liability claims (Counts V, VI, and VII). For the reasons below, the Court will grant their motion to dismiss as to these claims.

Defendants have not moved for dismissal of the following claims against the Police Officer Defendants in their individual capacities: excessive use of force (Count I), conspiracy to violate civil rights (Count II), assault and battery under Virginia law (Count III), gross negligence (Count VIII), and malicious prosecution (Count X). Thus, the Court will not analyze whether the allegations in support of these claims are sufficiently pleaded.

1. Count IV: Violation of Fourteenth Amendment Right to Substantive Due Process

Plaintiff claims that the Police Officer Defendants violated his right to substantive due process, as protected by the Fourteenth Amendment, because each of these defendants either participated or failed to intervene in Plaintiff's wrongful arrest, use of excessive force, and denial of medical care.[4] Defendants acknowledge that Plaintiff's claim for denial of medical care in

---

[4] Plaintiff also alleges that the Police Officer Defendants engaged in "unwarranted state interference in [his] familial relationship with his family." Dkt. 1 at ¶ 89. Plaintiff, however, does

violation of the Fourteenth Amendment "appears to be adequately alleged at this stage," and they have not provided any arguments in support of its dismissal. Dkt. 8 at 23 n.7. Thus, the Court will consider the denial of medical care claim under Count IV to be undisputed at this stage.

The Supreme Court has spoken clearly as to whether the Fourteenth Amendment is the proper vehicle by which to bring excessive force claims based on physical abuse at the hands of a government officer during an arrest.

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's ban against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct.

*Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that because an excessive force claim against a police officer was one arising under the Fourth Amendment, the lower court improperly analyzed the claim under the Fourteenth Amendment). The Supreme Court has further instructed that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham*, 490 U.S. at 395). In *Albright*, the Court held that substantive due process could not afford any relief to a plaintiff raising a claim of wrongful arrest by a police officer. Instead, the Supreme Court held, the plaintiff in *Albright* was obligated to raise his claim under the Fourth Amendment. *Id.*; *see Lytes v. Smith*, 11 F. Supp. 3d 527, 535, 537 (D.S.C. 2014).

---

not identify any relationship to any family members in his complaint, let alone what conduct was taken to interfere with that relationship.

Substantive due process does not provide a vehicle for Plaintiff's claim that the Police Officer Defendants used excessive force against him, unlawfully arrested him, or otherwise are liable for such acts on a theory of bystander liability under § 1983. *See Stevenson v. Seat Pleasant*, 743 F.3d 411, 417, 419 (4th Cir. 2014) (providing standard for bystander liability under § 1983 where police officer failed to intervene when his fellow officers allegedly engaged in unreasonable seizures). Rather, he must plead such claims under the Fourth Amendment. Accordingly, the Court will dismiss without prejudice the claims under Count IV, with the exception of Plaintiff's claim for denial of medical treatment.

### 2. Count VIII: Simple Negligence

The doctrine of sovereign immunity is well recognized in Virginia law. The doctrine is not limited to the sovereign, but rather it "extends to some of the people who help run the government." *Messina v. Burden*, 321 S.E.2d 657, 661 (Va. 1984). As the Supreme Court of Virginia has recently explained, "Virginia's sovereign immunity doctrine protects officers only for simple negligence"—including when they are sued in their individual capacity. *Cromartie v. Billings*, 837 S.E.2d 247, 254 (Va. 2020) (providing that Virginia's doctrine of sovereign immunity provides protection to municipal police officers sued in their individual capacity for simple negligence claims). Thus, the Court will dismiss Count VIII of Plaintiff's complaint to the extent it sets forth a claim of simple negligence. The Court will emphasize, however, that Defendants have not challenged the gross negligence claim against the Police Officer Defendants also set forth under Count VIII, and that claim will proceed.

### 3. Counts V, VI, and VII: Municipal Liability

As previously stated, the Court will dismiss Plaintiff's official capacity claims against the Police Officer Defendants, because official capacity suits against municipal officers are

duplicative of suits against the municipality itself. As should be obvious, the Police Officer Defendants, in their individual capacities, are not municipalities and thus cannot be held liable under any theory of municipal liability. *See Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013) (dismissing municipal liability claim against defendant in his individual and official capacities). Thus, Counts V, VI, and VII shall be dismissed with prejudice as against the Police Officer Defendants in their individual capacities.

    4.  <u>Count IX: Intentional Infliction of Emotional Distress</u>

Claims for intentional infliction of emotional distress are "disfavored" under Virginia law. *A.H. v. Church of Christ, Inc.*, 831 S.E.2d 460, 476 n.18 (Va. 2019). To state a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must plead that (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) the resulting emotional distress was severe. *Rose v. Centra Health, Inc.*, No. 6:17-cv-00012, 2017 WL 3392494, at *14 (W.D. Va. Aug. 7, 2017) (citing *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007)).

The Supreme Court of Virginia has held that to state a claim for IIED, the resulting emotional distress must be "so severe that no reasonable person could be expected to endure it." *Id*. at 188 (quoting *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006)); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 632–33 (W.D. Va. 2015). Further, the alleged conduct underlying IIED must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Almy*, 639 S.E.2d at 187.

Plaintiff has failed to allege facts sufficient to satisfy the elements of this claim, and so the Court will dismiss it. Specifically, Plaintiff has failed to sufficiently allege that he has suffered severe emotional distress. In *Russo v. White*, the plaintiff's allegations that she suffered stress, nervousness, and sleeplessness did not qualify as severe distress. 400 S.E.2d 160, 163 (Va. 1991); *see Harris*, 624 S.E.2d at 34 (allegations of "nightmares, difficulty sleeping, extreme loss of self-esteem and depression," and subsequent counseling did not state claim); *Dixon v. Denny's, Inc.*, 957 F. Supp. 792, 796 (E.D. Va. 1996) (feeling "fearful and degraded" and suffering "headaches and vomiting" does not satisfy fourth element). The complaint alleges Plaintiff suffered only the types of distress—for example, Plaintiff states that he "has been left fearful of all authority, and [Defendants] inflicted humiliation and embarrassment and other emotional and physical pain and suffering," Dkt. 1 at ¶ 168—that fail as a matter of law. *Marcantonio*, 155 F. Supp. 3d at 633.

Plaintiff's only other references in the complaint to his severe emotional distress are couched in conclusory terms that do little more than restate the elements of the prima facie case. For example, Plaintiff states that the Defendants caused him "serious physical and emotional injury." Dkt. 1 at ¶ 139; *see e.g.*, *id.* at ¶ 45 ("The delay of medical care caused Mr. Booker extreme physical and emotional pain and suffering"); *id.* at ¶ 86 ("emotional distress necessitating medical treatment and consequent medical expenses"); *id.* at ¶ 92 ("Mr. Booker suffered emotional distress, mental anguish, and pain"). Because Plaintiff provides no factual allegations to detail the severity of his emotional distress, he has failed to meet Rule 8's pleading standard as set forth by *Twombly* and *Iqbal*. *See Crittendon v. Arai Americas, Inc.*, No. 2:13-cv-567, 2014 WL 31490, at *5 (E.D. Va. Jan. 3, 2014) (dismissing intentional infliction of emotional distress claim under Virginia law because plaintiff offered "only two conclusory allegations that she suffered severe emotional distress but supports these allegations with no facts to illustrate the severity of the emotional

distress"). Accordingly, the Court will dismiss Count IX against the Police Officer Defendants without prejudice.[5]

### B.  City of Lynchburg

Defendants seek dismissal of all of the claims pleaded against the City of Lynchburg. The Court will dismiss all of the federal claims under Counts I, II, V, VI, and VII, because Defendant has not pleaded sufficient factual allegations to support his claim that the City is liable under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Further, the Court will dismiss the Virginia tort law claims against the City under Counts III, VIII, IX, X, XI, because they are barred by Virginia's sovereign immunity doctrine.

### 1.  Federal Claims: Counts I, II, V, VI, VII

Plaintiff alleges six claims against the City of Lynchburg pursuant to § 1983: use of excessive force (Count I); conspiracy to violate civil rights (Count II); "Municipal Liability – Ratification" (Count V); "Municipal Liability – Failure to Train" (Count VI); and "Municipal Liability – Unconstitutional Custom or Policy" (Count VII). Because Plaintiff has not alleged any basis for liability under *Monell* for any of the claims Plaintiff alleges against the City, the Court will dismiss these claims without prejudice.

A municipality cannot be held liable solely because one of its employees has violated the constitutional rights of another. *Monell*, 436 U.S. at 663 n.7, 691. But local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes

---

[5] Defendants argue that Plaintiff cannot proceed on a claim of intentional infliction of emotional distress resulting from a physical injury. However, Virginia law is not so limiting. A Plaintiff may proceed simultaneously on an assault and battery theory along with an intentional infliction of emotional distress theory in Virginia. *Speight v. Albano Cleaners, Inc.*, 21 F.Supp.2d 560, 565 (E.D. Va. 1998) (citing *Paroline v. Unisys Corp.* 879 F.2d 100, 112 (4th Cir. 1989), *aff'd in relevant part* 900 F.2d 27 (4th Cir. 1990) (per curiam) (en banc)).

a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. As the Supreme Court summarized:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 694 (emphasis added).; *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). Where a plaintiff seeks to establish liability on the basis of an unconstitutional formal or informal municipal custom, as opposed to an express policy—he must demonstrate that such practices are "so frequent in occurrence that actual or constructive knowledge is implied." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403–04 (1997)).

"[L]iability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added). There must be "a deliberate choice to follow a course of action" by the "official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483. Importantly, "merely going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003).

"If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In order to show that a decision has been ratified,

a Plaintiff must demonstrate that the final policymaker was both aware of the subordinate's action at issue and that it "affirmatively approved both the act and its rationale." *Davison v. Loudon Cty. Bd. of Supervisors*, No. 1:16-cv-932, 2016 WL 4801617, at *6 (E.D. Va. Sept. 14, 2016) (citing *Ashby v. Isle of Wight Cty. Sch. Bd.*, 354 F. Supp. 2d 616, 627 (E.D. Va. 2004)).

Plaintiff has failed to plead sufficient factual allegations of any policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City's officers in relation to any of his claims, as *Monell* requires. Specifically, this is true as to his claims of excessive force, conspiracy, failure to train, and the other "municipal liability" claims he raises. Indeed, he does not reference any specific policy statement or decision of any policymaker in his complaint, at least in more than conclusory terms. *See, e.g.*, Dkt. 1 at ¶ 64 ("[The City and Lynchburg City Police Department] created a policy and custom, and they allowed the continuance of a policy and custom, under which detainees and individuals subject to arrest would be subjected to the use of excessive and unreasonable force"); *id.* at ¶ 117(i) ("Maintaining a policy of inaction and an attitude of indifference towards use of excessive force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in beating of unarmed people"). Other courts faced with similarly conclusory allegations in support of *Monell* claims have dismissed them as failing to meet the standard set by Rule 8. *See, e.g.*, *Walker v. Prince George's Cty.*, 575 F.3d 426, 431 (4th Cir. 2009); *Drury v. Dziwanowski*, No. 15-cv-3845, 2016 WL 1045801, at *3 (D. Md. Mar. 16, 2016).

Plaintiff's claim that the City ratified the Police Officer Defendants' conduct also lacks the necessary factual content in order to meet Rule 8's pleading standard. Plaintiff alleges,

> Upon information and belief, the City, acting under color of law, who had final policymaking authority concerning the acts of the [Police Officer Defendants], ratified the acts of the [Police Officer Defendants] acts [*sic*] and the bases for them. Upon information and belief, the city knew of and specifically approved of the

> [Police Officer Defendants'] acts. Upon information and belief, the City has determined (or will determine) that the acts of the [Police Officer Defendants] were "within policy."

*Id.* at ¶¶ 99–100. These allegations are, again, no more than conclusions devoid of factual content. *See Van Buren v. Walmart, Inc.*, No. 19-cv0911, 2020 WL 1064823, at *4 (D. Md. Mar. 5, 2020) (holding that "information and belief" pleadings that allege no more than conclusions are insufficiently pleaded under Rule 8). Plaintiff  has not cited any statement or action taken by any person acting on behalf of the City, and his allegations in this regard are no more than speculative—indeed he merely claims that the City either "has determined (or will determine)" that the acts of the Police Officer Defendants were within policy. Such allegations are unable to raise Plaintiff's claims "above the speculative level." *Twombly*, 550 U.S. at 545; *see Socol v. Albemarle Cty. Sch. Bd.*, 399 F. Supp. 3d 523, 540–41 (W.D. Va. 2019) (holding that conclusory assertion that school board ratified a subordinate's actions was insufficient to support a claim of *Monell* liability at the pleading stage).

Moreover, *ex post* support for the Police Officer Defendants' actions could not satisfy the strict causation requirement imposed on *Monell* claims. Specifically, the actions the City took after the Police Officer Defendants engaged in the alleged unconstitutional misconduct could not have been the "moving force" behind those defendants' alleged constitutional violations if the City's actions *followed* the Police Officer Defendants' actions. *See Bryan Cty.*, 520 U.S. at 397. Accordingly, the Court cannot find that the City is liable under *Monell* for any final policymaker's ratification of a subordinate's decision in relation to any of the counts against it.

Plaintiff also does not plead sufficient factual allegations to support his claim that the City is liable for any of the claims against it on the basis of an unconstitutional custom. He has pleaded

vague allegations of "repeated failures to follow policies and procedures," Dkt. 1 at ¶ 65,[6] and mainly relies on a single incident to support the existence of an unconstitutional custom. *See, e.g.*, *id.* at ¶¶ 116, 120. Thus, Plaintiff has failed to demonstrate that such practices are "so frequent in occurrence that actual or constructive knowledge is implied." *Jackson*, 771 F. Supp. 2d at 604. Plaintiff's allegations of an unconstitutional city custom lack the necessary factual content to meet the pleading standard set forth by *Twombly* and *Iqbal*. *See Jackson*, 771 F. Supp. 2d at 604 (dismissing *Monell* claim where plaintiff pleads allegations of unconstitutional custom in conclusory terms). For example, Plaintiff has not provided any detail as to what these failures were, when they occurred, or who committed them.

Further, Plaintiff cannot rely on the facts underlying his own incident in order to establish a failure-to-train claim pursuant to *Monell*. "[A] single incident is almost never enough to warrant municipal liability." *Jones v. Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020); *Connick*, 563 U.S. at 63 (emphasizing that single-incident liability is available to demonstrate deliberate indifference in only a very "narrow" category of circumstances). The Supreme Court provided a very limited exception under which

> in light of the duties assigned to specific officers or employees the need for more or different training [may be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Canton v. Harris*, 489 U.S. 378, 390 (1989). But even still, "*Monell*'s deliberate indifference standard ensures that a municipality either knew or should have known about the [training]

---

[6] Plaintiff also references how the City has in the past announced that "use of excessive force is 'within policy,' including shootings that were later determined in court to be unconstitutional." Dkt. 1 at ¶ 117(g). While this is somewhat less vague than "repeated failures to follow policies and procedures," it still provides no facts to indicate whether such events were so frequent that the Court can determine that the City's actual or constructive knowledge of the custom is implied.

deficiency, so it could remedy that deficiency. At its core, the strict *Monell* test asks for some level of notice." *Jones*, 961 F.3d at 672. At bottom, Plaintiff has failed to plead non-conclusory allegations showing that the City either could have or should have been on notice of the training deficiencies alleged before the three officers attacked the Plaintiff in this case on July 18, 2018, as Plaintiff alleges. *See id.* (holding that "five officers acting at once could not have put the City on earlier notice of the need to better train its officers as to the existing use-of-force policy"). For example, as discussed above, Plaintiff has failed to plead in non-conclusory terms why the City's excessive force policy is deficient, let alone even identified in non-conclusory terms what its policy is. *See id.* ("At least as framed on appeal, Jones's death is an isolated incident of excessive force that cannot fall into the *Canton* exception, because Martinsburg *did* have an aggression policy, and the Estate has not shown how or why that policy is deficient—except by pointing to this single incident.").

Plaintiff has failed to sufficiently allege any policy (whether express or adopted through ratification) or custom that could provide a basis for municipal liability under any of his § 1983 claims—specifically, his excessive force claim under Count I, conspiracy claim under Count II, his failure-to-train claim under Count VI, and his municipal liability claims that allege both the express and ratified adoption of an unconstitutional policy or custom under Counts V and VII. Accordingly, the Court will dismiss each of these claims against the City without prejudice.

2.   Virginia Tort Law Claims: Counts III, VIII, IX, X, XI

Plaintiff alleges five tort claims under Virginia law against the City of Lynchburg: assault and battery (Count III); negligence (Count VIII); intentional infliction of emotional distress (Count IX); malicious prosecution (Count X); and negligent retention (Count XI).

"It is well established that the doctrine of sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions." *Niese v. Alexandria*, 564 S.E.2d 127, 132 (Va. 2002). At least with regard to a municipality, this is true as to both negligence and intentional torts. *Id.* (holding that sexual assault and battery, intentional infliction of emotional distress, and negligent retention claims against the City of Alexandria on the basis of a police officer's conduct, were barred by sovereign immunity). The key inquiry is whether the City's act was done pursuant to its governmental role or its proprietary role. *Id.* at 134.

Here, as in the situation faced by the Supreme Court of Virginia in *Niese*, Plaintiff seeks to bring suit against the City based on actions undertaken by a city police officer during an arrest and the malicious prosecution of criminal charges which arose out of that arrest. A municipality is immune from liability for the actions of a police officer undertaken during the performance of his law enforcement duties and from liability arising out of the municipality's role in maintaining its police force. *Id.* at 132–33. Because all of the conduct underlying the tort claims against the City under Counts III, VIII, IX, X, and XI relates to either an "integral part of the governmental function of maintaining a police force" or engaging in the city's governmental function of law enforcement, the Court finds that sovereign immunity protects the City from these claims. *Id.* at 133; *Green v. Mills*, No. 3:19-cv-906, 2020 WL 2850177, at *6 (E.D. Va. June 2, 2020) (holding that sovereign immunity barred gross negligence claim against Virginia municipality based on police officer's conduct). Accordingly, the Court will dismiss with prejudice Counts III, VIII, IX, X, and XI as against the City of Lynchburg.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted, and the claims against the City of Lynchburg, the Lynchburg City Chief of Police, Lynchburg City Police Department, and the Police Officer Defendants in their official capacities shall be dismissed in their entirety.

As against the Police Officer Defendants in their individual capacities, Counts V, VI, VII, and IX will be dismissed in their entirety; Count IV will be dismissed except to the extent that it states a claim for denial of medical care; and Count VIII will be dismissed except to the extent it states a claim for gross negligence. As Defendant did not seek their dismissal, Counts I, II, and X will proceed in their entirety as against the Police Officer Defendants in their individual capacities.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record.

ENTERED this <u>22nd</u> day of July, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE