## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **LARRY ANTHONY BOOKER,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | |
| **CITY OF LYNCHBURG,** | ) | |
| | ) | |
| **POLICE OFFICER #1 LUKE SCHARTIGER** | ) | |
| **(In official capacity and as individual)** | ) | |
| | ) | |
| **POLICE OFFICER #2 JONATHAN BRAGG** | ) | |
| **(In official capacity and as individual)** | ) | |
| | ) | |
| **POLICE OFFICER #3 NATHAN R. GODSIE** | ) | |
| **(In official capacity and as individual)** | ) | |
| *Defendants.* | ) | |
| | ) | |
| **Serve: City Hall** | ) | |
| **Walter C. Erwin, Esq.** | ) | |
| **900 Church Street** | ) | |
| **Lynchburg, Virginia 24504** | ) | |

---

## CIVIL COMPLAINT

---

1.  This is an action for deprivation of civil rights under the Civil Rights Act, pursuant to *42 U.S.C. Secs. 1983*, and under state law for assault and battery, and illegal search. Plaintiff brings this civil rights action to redress the deprivation under color of state law of the rights, privileges and immunities secured to him by the Constitution of the United States and the laws of the United States and the Commonwealth of Virginia. Plaintiff brings forth claims for violation of his right to be free from unreasonable and excessive use of force upon his person during arrest and detention in violation of the *Fourth and Fourteenth Amendments*, unlawful search under the *Fourth Amendment*, for civil conspiracy pursuant to *42 U.S.C. Sec. 1983*, and state law claims for assault and battery and illegal search. Plaintiff brings

this action against the Lynchburg City Police Officers responsible for his injuries, against the City of Lynchburg as being responsible for the conduct of the Lynchburg City Police Officers and final policymaker for the City of Lynchburg Police Department, and against the Lynchburg City Police Department, which is sued as a person under 42 U.S.C. Sec. 1983, as the entity responsible for the promulgation of a policy or custom regarding the use of excessive force, as the Plaintiff seeks compensatory and punitive damages, declaratory and injunctive b relief, and attorney's fees and costs.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to *28 U.S.C. Sections 1331, 1343,* and *1367.*

3.    Venue is proper in this District under *28 U.S.C. Sec. 1391(b),* as a substantial part of the unconstitutional acts and omissions complained of occurred in the City of Lynchburg in the Western District of Virginia.

## PARTIES

4.    At the time of the incident Larry Anthony Booker was within the Commonwealth of Virginia, and now resides in North Carolina.

5.    Lynchburg City Government (the "City") operates from within City Hall at 900 Church Street, Lynchburg, Virginia 24504, and was a municipal corporation existing under the laws of the Commonwealth of Virginia. The City is a chartered subdivision of the Commonwealth of Virginia with the capacity to be sued. The City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Lynchburg City Police Department ("LCPD"), its K9 element and its agents and employees. At all relevant times, the City was responsible for assuring that

the actions, omissions, policies, procedures, practices, and customs of the LCPD and its employees and agents complied with the laws of the United States and of the Commonwealth of Virginia. At all relevant times, the City was the employer of Defendants Luke I. Schartiger ("Schartiger"), Jonathan H. Bragg ("Bragg"); Nathan R. Godsie ("Godsie"); (hereinafter collectively referred to as "the individual defendants").

6.      Luke Schartiger works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504. At all relevant times, Schartiger was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Schartiger was acting with the complete authority and ratification of his principal, the City.

7.      Jonathan Bragg works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504. At all relevant times, Bragg was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Bragg was acting with the complete authority and ratification of his principal, the City.

8.      Nathan Godsie works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504, and is an officer working for the City, through his employment with the LCPD and its Canine ("K9") team. At all relevant times, Godsie was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department and its K9 team. Also at all relevant times, Godsie was acting with the complete authority and ratification of his principal, the City.

## **FACTUAL BACKGROUND**

9.     This incident occurred on July 18, 2018, at approximately 15:25 p.m., at or around the intersection of Taylor Street and 16th street in the City of Lynchburg, Commonwealth of Virginia.

10.    Officers Schartiger and Bragg were patrolling the area as part of the "Special Investigations Response Team" by getting "behind cars [to] see if there's anything going on."

11.    This was only occurring in the Black Community and they were getting behind cars occupied by young Black men or women.

12.    Mr. Larry Anthony Booker was a Black man who was driving in a residential area in the Black Community when he was pulled over by Officer Schartiger and Officer Bragg for a minor traffic violation, allegedly for running a stop sign.

13.    The Officers had been watching Mr. Booker's parked vehicle and when he got in the vehicle to leave they followed him.

14.    The Officers called Officer Godsie to meet them with the police dog prior to stopping Mr. Booker, and when Mr. Booker was stopped Officer Godsie arrived at the scene seconds later.

15.    Mr. Booker complied with the vehicle stop and informed the Officer Schartiger that he did not have a driver's license.

16.    The Schartiger requested to search the vehicle, and Mr. Booker politely exercised his constitutional right to deny the officer of a consensual search and plainly responded "no".

17.    Mr. Booker was then told to exit his vehicle and stand with Officer Bragg.

18.  Mr. Booker was patted down/searched immediately upon exiting the vehicle, then physically moved between the officers car and his car, and was placed beside Officer Bragg.

19.  While Mr. Booker was calmly standing in proximity to Officer Bragg, Officer Schartiger performed an illegal search of the vehicle, and while he did not observe any weapons, he did allegedly observe packaging claimed to be consistent with drug packaging and drugs.

20.  This search extended the stop for allegedly running a stop sign.

21.  The Officer had no authority to search the vehicle, and it was not likely that any evidence would be discovered related to Mr. Booker's traffic infraction or driving with a suspended license.

22.  Officer Schartiger, advises the K-9 officer that they had called to "run" the vehicle, while he allegedly attempted to begin writting the summons.

23.  Mr. Booker was then moved by Officer Bragg to a location on the hill beside the cars, closer to the police car that Officers Bragg and Shartiger had been driving.

24.  Officer Schartiger alleges that he stood near while beginning to write the summons because Mr. Booker exhibited signs of an individual who wants to run away.

25.  K9 Officer Godsie "ran" the vehicle and indicated that the "dog alerted" at the trunk, then Officers Schartiger, Bragg, and Godsie tried to immediately detain Mr. Booker.

26.  Mr. Booker was not told that he was under arrest, but was told to put his hands behind his back and to stop resisting.

27.  Officers Bragg and Schartiger grabbed Mr. Booker's arms while Officer Godsie stood in front of Booker threatening him with the dog.

28.   Officer Schartiger took Mr. Booker down to the ground, by grabbing both of Mr. Booker's legs.

29.   When Booker first hit the ground he had Officer Braggs arm around his throat, Bragg had one arm pent up and Officer Schartiger grabbed the other arm.

30.   Officer Schartiger testified at a preliminary hearing that Mr. Booker kept asking what they were doing and stating that he was not resisting.

31.   It was around this time that Officer Godsie had the dog attack Mr. Booker.

32.   Officer Godsie testified at a preliminary hearing that the dog, Arko, was trained to protect him and when people are close Arko is trained to bite, and in this case he was ordered to bite Mr. Booker.

33.   Officer Godsie testified that on the initial scan of the car Arko stopped at the trunk, turned and faced the vehicle, and had increased respirations and began detailing the bottom of the trunk seam on his own, which is Arko's "alert".

34.   Arko has a history of false alerts, and/or alerting when no drugs were present.

35.   Officer Godsie alleged that Arko would detect the smell of drugs more than a couple of days after drugs have been removed from a location.

36.   Officer Godsie testified that he gave Arko the command to attack while Mr. Booker was on the ground with Officers Bragg and Schartiger.

37.   While Mr. Booker was being held on the ground by Officers Bragg and Schartiger, and the dog was biting or locked onto his leg, Officer Godsie struck his legs over thirty times in his lower extremity, and Officer Bragg struck Mr. Booker several times in the arm and head with his fist.

38. The dog would not release Mr. Booker's leg even after Mr. Booker was hand cuffed and Officer Godsie appeared to be attempting to obtain a release by raising the dog, and Mr. Booker's leg, into the air and giving him several commands.

39. Eventually the dog released Mr. Booker's leg from his locked jaws, and as he released the dog took another bite at Mr. Booker's foot.

40. Mr. Booker was defenseless when the Officers had his arms restrained and had him on the ground, during the assaults by the Officers and the dog.

41. Mr. Booker screamed out in pain from the assaults by the Officers and the dog.

42. The police K9 was not used according to the City of Lynchburg/Lynchburg Police Department Policy.

43. The policy states that police canines may be used as a means of: (a) physical restraint, (b) apprehending or subduing a person resisting arrest, (c) defense of any person, (d) crowd control, or (e) moving, removing or arresting any person who is obstructing a lawful police action in such a manner that the police action cannot be accomplished.

44. In this case the K9 was used to threaten, intimidate, attack, inflict pain, and to cause injury.

45. After the assault, and while Mr. Booker was being taken to the hospital to be treated for his injuries, Officer Schartiger conducted a field test on the material in the mesh bag he allegedly saw and thought was methamphetamines, and his field test allegedly yielded positive results.

46. However, when later tested by the Department of Forensic Science it was confirmed that the material was not a drug at all.

47.     Officer Schartiger knew that the field test did not yield a positive result for drugs, and his allegation of a positive test was in order to add charges to Mr. Booker in light of the excessive force used against him.

48.     In fact, there were no drugs found in Mr. Booker's car what so ever.

49.     Mr. Booker never threatened any of the Officers or K9, made no aggressive movements toward any of the Officers, made no furtive gestures, and no physical movements that would suggest to the Officers that Mr. Booker was attempting, willing, or intending to inflict harm on any person or escape.

50.     Mr. Booker's body weight and size was smaller than each of the individual officers that attacked him.

51.     Mr. Booker complied with all of the Officer's commands when he exited the vehicle.

52.     Mr. Booker was physically moved several times by the officers after he exited the vehicle.

53.     Despite the foregoing facts, the Officers physically detained Mr. Booker, and while he begged and pleaded for mercy, continuously beat Mr. Booker with police batons multiple times, choked Mr. Booker, and instructed the K9 to attack Mr. Booker. All defendants meaningfully participated in the detention of and use of force against Mr. Booker by either directly using force against Mr. Booker, going hands on with Mr. Booker during the incident, ordering another Defendant to use force against Mr. Booker, providing the means by which force was used against Mr. Booker (baton, fist, K9), restraining Mr. Booker, and giving orders to Mr. Booker. All Defendants also failed to instruct any other Defendant not to use force against Mr. Booker, to provide aid to Mr. Booker, and failed to intervene to stop the force being used against Mr. Booker

54.   As a result of Defendants' use of excessive force, Mr. Booker suffered multiple strains, sprains, wounds, gashes, contusions, and abrasions. The use of force against Mr. Booker was excessive and objectively unreasonable under the circumstances, especially because Mr. Booker had no firearms on his persons, and did not pose an immediate threat of death or serious bodily injury to anyone at any time immediately prior to or during the use of force.

55.   Mr. Booker suffered serious and permanent injuries from the K9 attack and the repeated strikes by the baton to his lower extremities.

56.   After being bitten, choked, combatively restrained, and violently beaten, Mr. Booker experienced pain and suffering from his injuries. Mr. Booker was bleeding, and in obvious and critical need of emergency medical care and treatment. Defendants did not timely summon medical care. The delay of medical care to Mr. Booker caused extreme physical and emotional pain and suffering, and was a contributing cause of Mr. Booker's injuries. Mr. Booker's injuries required emergency treatment at Lynchburg General Hospital.

57.   This horrific beating that occurred during the afternoon of July 18, 2018, was witnessed by several concerned residents of the community.

58.   The incident was also captured on body-cam video worn by the Lynchburg City Police Officers who administered the brutal beating against Mr. Larry Anthony Booker.

59.   The actions of the Defendants related to Mr. Booker were done in a wanton, culpable, and grossly negligent manner.

60.   The actions were undertaken in conscious disregard of Mr. Booker's rights, and with a reckless indifference to the consequences of their actions, of which they were aware, that the result would cause injury to Mr. Booker.

61.   This was not the first time Officers of the Lynchburg Police Department injured citizens or

attempted to maliciously prosecute them thereafter.

a.   Upon information and belief on March 29, 2001, Craig Morris, a black male, was

sprayed with pepper spray and then struck several times by officers of the Lynchburg

Police Department.  The officers were allegedly putting Mr. Morris under arrest for

using the term "f_ck", and Mr. Morris did not resist arrest or use any force against the

officers, but nevertheless was beaten by said officer of the Lynchburg Police

Department;

b.   Upon information and belief on October 18, 2013, Montavious Wells and Tramane

Green, black males, were injured by officers of the Lynchburg Police Department when

they were tazed and beaten by officers for allegedly getting smart when asked to

identify what high school they went to. Neither Mr. Wells nor Mr. Green threatened

the officers, threatened to flee from the officers, or posed a danger to any officers or

the public;

c.   Upon information and belief on January 23, 2016, George Brown, a black male, was

injured when officers of the Lynchburg Police Department ordered the police K9 to

attack Mr. Brown, while Mr. Brown was not resisting arrest or presenting any threat to

the officers;

d.   Upon information and belief on February 11, 2016, Brandon Sandifer, a black male,

was injured when officers of the Lynchburg Police Department broke his leg during an

arrest at his home for allegedly trespassing;

e.   Upon information and belief on November 28, 2016, Donald Lipford, a black male,

was injured when officers of the Lynchburg Police Department struck him several

times and ordered the police K9 to attack Mr. Lipford, while he was not resisting arrest or presenting any threat to the officers;

f.   Upon information and belief on November 5, 2017, Pamela Webber, a black female, was shot and killed by officers of the Lynchburg Police Department, when they were called to her residence on allegations that she was suicidal and had a knife.  After barricading herself in her room Ms. Webber was convinced to come out by officers of the Lynchburg Police Department, and they shot her alleging that she "advanced" on the officer with the knife;

g.   Upon information and belief on February 17, 2018, Walker Sigler was shot by officers of the Lynchburg Police Department, while he was in his home, committing no crime, not presenting a threat to the officers, was unarmed, and not attempting to flee the officers;

h.   Upon information and belief on December 12, 2018, Michelle Jefferson, a black female, was injured by officers of the Lynchburg Police Department while they were serving a warrant on her at her home. She was grabbed and assaulted by the officers and charged with assault on law enforcement.

i.   Upon information and belief on December 30, 2018, Malik Andrews, a black male, was shot by officers of the Lynchburg Police Department after officers saw him with a rifle on his shoulder;

j.   Upon information and belief on March 30, 2019, Thyanna Trent, a black female, was assaulted and injured by officers of the Lynchburg Police Department, while allegedly trespassing while walking toward the exit at the River Ridge Mall in Lynchburg;

k.  Upon information and belief on June 16, 2019, Brian Anderson, a black male, was injured by officers of the Lynchburg Police Department for allegedly obstructing justice. Mr. Anderson was pulled out of his truck and thrown to the ground, had officers hold him down by knees, while other officers yanked his arms, causing injury to his shoulders;

l.  Upon information and belief on July 3, 2019, Mario Jackson, a black male, was injured by officer of the Lynchburg Police Department after he was stopped for an alleged "window tint violation." After having Mr. Jackson exit his vehicle the officers grabbed him and slammed him against the car, threw him to the ground, then beat him while he begged the officers to stop.

m.  Upon information and belief on March 7, 2020, Aniyah Hicks, a black female, was injured by officers of the Lynchburg Police Department, requiring her to receive seven stitches to close a gash above her eye, when she was assaulted, thrown to the ground, then had her face mashed to the ground by Officer Godsie, while she was presenting no danger to any officer or the public, was not attempting to flee, and was breaking no law, other than being present at a fight;

62.  According to a September 1, 2019, article by Richard Chumney of the Lynchburg News and Advance, in 2016 police in Virginia failed to properly report 60% of officer-involved shooting, 30% in 2017, and 19% in 2018, including the shooting of Walter Seigler.

63.  The Lynchburg Police Department is a Department under the control of the City of Lynchburg, who is the final authority related to the Departments policy.

64.  The force used by the officers was Deadly Force pursuant to the written policy on Use of Force (PD15-0602), as the actions were likely to cause serious physical injury, and in fact

did cause serious physical injury. The policy lists when deadly force may be used, and none of the permissive situations occurred related to Mr. Booker and the Defendants.

65.   The policy related to the use of the police baton authorizes its use as a means of physical restraint or control, and defense of any person, but forbids its use for the intentional striking of any person who is under control by an officer.  Mr. Booker was struck by Officer Godsie while he was under the control of Officers Bragg and Schartiger.

66.   The policy related to the use of police canines prohibit the use of the canine as a threat to make a person comply with an officer's verbal order when no physical violence is imminent.  Officer Godsie used the K9 Arko to threaten Mr. Booker when no physical violence was imminent.

67.   The policy states that the decision to notify an off duty K9 Team to respond to an incident scene will be at the discretion of a supervisor, and based upon the (1) nature and seriousness of the incident and (2) probable effectiveness of a canine in resolving the incident.

68.   The K9 policy of the Lynchburg Police Department usually results in citizens getting injured by the K9, permitting officers to use excessive force under the policy.

69.   A part of the K9 policy for the Lynchburg Police Department is called "pain compliance" – having a K9 bite a suspect during arrests – which usually causes severe pain to the citizen and does not work. There are several policies other than the "bite and hold" method, such as the methods called "bark and hold" or "find and bark".

70.   The policy states that IBR and supplement incident reports should <u>not</u> include detailed information concerning an officer's use of force, but for purposes of courtroom testimony the reports should include detailed factual information to establish all elements of the related crime and to describe suspect actions that led to an officer's use of force.

71. According to the Lynchburg Police Department 2018 Annual Report in 2018 crime was down but the number of arrests was up.  Also that of the 53 use of force incidents in 2018 44 were found to be within guidelines and 9 were still being reviewed.  In other words none were found to be outside of the City's guidelines/policies.

72. The policy of the City of Lynchburg does not require the employees of the Lynchburg Police Department to have annual excessive force training.

73. The City of Lynchburg has the last say on the hiring and retention of employees of the Lynchburg Police Department.

74. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

75. On or about August 1, 2018, Plaintiff, Mr. Larry Booker sent a timely Notice of Claim to all relevant parties for damages with the City of Lynchburg in substantial compliance with Virginia Code Section 15.2-209.

## COUNT I – FOURTH AMENDMENT VIOLATIONS
(All Defendants)

76. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

77. Mr. Booker had a cognizable interest under the Fourth Amendment to be secure in his person, house, papers, and effects against unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force.

### a.   Unlawful Search

78. The Fourth Amendment protects against unreasonable searches without a warrant and without probable cause, and physically intruding the space of a vehicle for purposes of gathering information is a search.

79. After Mr. Booker exited his vehicle and was physically moved to a location between the vehicles and by Officer Bragg, Officer Schartiger searched the interior of Mr. Booker's vehicle.

80. The physical intrusion of Mr. Booker's car by Officer Schrtiger for the purpose of gathering information constitutes a "search" for Fourth Amendment purposes.

81. Mr. Booker's constitutional guarantee against unreasonable searches was violated when Schartiger, in spite of lacking probable cause or a warrant, searched his vehicle.

82. Not only did the search violate the Fourth Amendment, but also Va. Code §19.2-59.

83. Officer Schartiger's actions exceeded simple negligence because the search was forbade by settled and indisputable law, and the conduct constituted wanton and willful misconduct taken in disregard of another's rights.

84. At the time of the search Mr. Booker was secured and could not access the interior of the vehicle, as he was behind the vehicle beside Officer Bragg.

85. Mr. Booker's vehicle could not have contained any evidence of running a stop sign or driving on a suspended license, and it would be unreasonable to believe otherwise.

b. Excessive Force

86. The Graham factors establish that the officer's use of force was objectively unreasonable under the Fourth Amendment.

87. Immediately prior to the assault upon Mr. Booker he was being seized related to an alleged traffic infraction and driving on a suspended operator's license.

88. Mr. Booker was searched upon exiting the vehicle, and therefore posed no immediate threat to the Defendants or others while he was standing at the rear of his vehicle.

89. Within the meaning of the Fourth Amendment, Mr. Booker was seized when Bragg physically moved him to the rear of the car and he submitted to Bragg's authority.

90. It was unreasonable at the moment that force was employed under the Fourth Amendment for the defendants to intrude upon Mr. Booker's person and effects when weighted against

the countervailing interest related to the alleged traffic infraction and driving on a suspended license.

91.  Mr. Booker made no threatening actions or statements; the Defendants had no reason to believe Mr. Booker was currently armed, and Mr. Booker initiated no physical contact with the Defendants.

92.  Mr. Booker was not actively resisting arrest or attempting to evade arrest by flight when the Defendants took him to the ground, choked him, ordered the canine to attack him, and beat him numerous times with the police baton.

93.  Upon information and belief, defendants L.I. Schartiger, J.H. Bragg, and N. Godsie, intentionally and maliciously beat, injured, and harmed Mr. Booker without provocation or reason, resulting in serious injuries, including, but not limited to, a left and right ankle sprain, right and left wrist strain, a right and left forearm strain, multiple contusions and hematomas from animal bites and a right and left flank abrasion, requiring medical attention and treatment.

94.  This use of excessive force was deliberate and intentional and was not objectively reasonable under the circumstances. The force was applied maliciously and sadistically for the very purpose of causing harm, and inflicting unnecessary and wanton pain and suffering.

95.  Mr. Booker neither posed an immediate threat to the safety of the officers or others, nor did he attempt to resist or evade arrest, to warrant such a disproportionate use of force under the circumstances.

96.     The defendants did not have any reason to believe that Mr. Booker, a young man of average height and less than average weight, who was unarmed, posed a threat to the officers or anyone else.

97.     Mr. Booker was outweighed by each of the three officers, who individually could have successfully effectuated an arrest of Mr. Booker.

98.     By using excessive force on Mr. Booker, defendants Schartiger, Bragg, and Godsie deprived Mr. Booker of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under *42 U.S.C. Sec. 1983,* including, without limitation, rights guaranteed by the Fourth Amendment to the United States Constitution.

99.     The officers were on notice and had "fair warning" that their actions were unconstitutional.

100.    The City was responsible for assuring that the Lynchburg City Police Department did not violate the rights of arrestees or pretrial detainees by using excessive force, and for assuring that individuals employed in the Lynchburg City Police Department were properly trained and supervised regarding the use of excessive force.

101.    The City of Lynchburg was personally involved in and responsible for the excessive force used against Mr. Booker in that:

   a.   They created or affirmed a policy and custom, and allowed the continuance of a policy and custom, under which detainees and individuals subject to arrest would be subjected to the use of excessive and unreasonable force;

   b.   They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein;

   c.   They required no annual training on how to prevent the use of excessive force; and

    d.  They always affirmed the decision of the Lynchburg Police Department related to claims of excessive force and never independently investigated any of the claims.

102.    The gross indifference by the City and the Lynchburg City Police Department to the conduct of officers, which includes repeated failures to follow policy and procedures, unnecessary use of excessive force, roughness during arrest, and intimidation of suspects during arrests, led to the violation of Mr. Booker's constitutionally protected rights. The failure of the Chief of Police and the Lynchburg City Police Department to take corrective action after learning of prior instances of the officers' misconduct, and the failure to properly train the officers, led to these violations.

103.    All defendants acted pursuant to the policies, regulations and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy or were pursuant to a governmental custom, usage or practice of the Lynchburg City Police Department as ratified by the City of Lynchburg.

104.    These actions by defendants Schartiger, Bragg, and Godsie were of a malicious and intentional nature and manifested a deliberate indifference to the constitutional rights of Mr. Booker.

105.    Mr. Booker's constitutional rights at issue were clearly established at the time of the violations by the Defendants.

106.    Defendants acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Booker of his constitutional rights secured by *42 U.S.C. Sec. 1983* and by the *Fourteenth Amendment* to the United States Constitution.

107.   As a direct and proximate result of the Defendants' actions, Mr. Booker has suffered and will continue to suffer physical pain and suffering, physical injury, medical expenses, humiliation, psychological pain, suffering and mental anguish, and other damages.

### COUNT II - CONSPIRACY TO VIOLATE CIVIL RIGHTS
(All Defendants)

108.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

109.   Defendants acted jointly and in concert to violate Mr. Booker's civil rights.

110.   All defendants took some overt act in furtherance of the conspiracy, and all defendants agreed to act together to violate Mr. Booker civil rights.

111.   Namely, each defendant either participated in the use of excessive force, or witnessed the excessive force but failed to intervene, or acquiesced in the actions taken or covered up the actions even after Mr. Booker filed a formal Notice of Claim regarding the officers' actions.

112.   All defendants failed to intervene, or acquiesced to the defendants' version of the event to cover up an assault on Mr. Booker, to include false information in the report of the investigation, to conducting an inadequate investigation of the July 18, 2018 incident, intimidating Mr. Booker following the incident while he was under arrest, injured, and on pain medication, and to refuse to release the investigative report or other documents associated with the July 18, 2018, incident to Mr. Booker. All defendants had agreed, prior to July 18, 2018, that instances of the use of excessive force by the employees of the Lynchburg City Police Department/City of Lynchburg would be covered up by inadequate investigations and malicious prosecutions.

113.   The acts and omissions of the defendants proximately caused Mr. Booker's suffering, pain and injuries.

114.    The defendants knowingly participated in a conspiracy to violate Mr. Booker's civil rights, thus subjecting him to pain, physical and mental injury in violation of his rights under the Fourteenth Amendment to the United States Constitution.

### COUNT III - ASSAULT AND BATTERY
(Bragg, Scartiger, Godsie)

115.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

116.    Upon information and belief, defendants Schartiger, Bragg, and Godsie repeatedly touched Mr. Booker in a vicious, rude, insulting, brutal, unwanted and offensive manner.

117.    Upon information and belief, defendants Schartiger, Bragg, and Godsie without provocation or excuse twisted Mr. Booker's arms behind his back, forced him to the ground, struck him repeatedly with fists and batons, kicked and punched him in the head, choked him, and allowed the K-9 to continuously bite Mr. Booker's body.

118.    The touching was unsolicited by Mr. Booker, unwarranted, and inappropriate.

119.    The unwanted touching was not consented to, excused or justified. Furthermore, defendants Schartiger, Bragg, and Godsie engaged in acts intending to cause harmful or offensive contact with Mr. Booker or to create a reasonable apprehension of an immediate, unwanted touching for Mr. Booker. These actions constitute assault and battery, put Mr. Booker in fear of, and apprehensive of, being struck, bit and physically harmed.

120.    At the time the tortious conduct that injured Plaintiff was committed, defendants Schartiger, Bragg, and Godsie were acting within the scope of their employment duties and their tortious conduct was therefore imputable to defendant City of Lynchburg.

121.    The City's failure to properly train and supervise Defendants Schartiger, Bragg, and Godsie was a proximate cause of Mr. Booker's injuries.

122.   The actions of the Defendants were malicious, intentional and amounted to extreme and outrageous conduct, causing Plaintiff to suffer emotional distress necessitating medical treatment and consequent medical expenses.

123.   As a proximate result of the Defendants' actions as set forth above, Plaintiff has suffered and will continue to suffer, physical pain and suffering, physical injury, medical expenses, humiliation, psychological pain, suffering and mental anguish, and other damages.

### COUNT IV – FOURTEENTH AMENDMENT VIOLATION
(By Defendants: Schartiger, Bragg, and Godsie)

124.   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

125.   Mr. Booker had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to the right to bodily integrity.

126.   The Fourteenth Amendment applies during pretrial detentions.

127.   Mr. Booker was detained and not free to leave when he submitted to the officer's authority and was moved to the location between the vehicles, when he was moved up on the hill by the vehicles, and when he was being choked and struck with the baton.

128.   The aforementioned actions of Defendants Schartiger, Bragg, and Godsie, along with other as of yet undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Booker with the purpose to harm, unrelated to any legitimate law enforcement objective.

129.   Mr. Booker's Fourteenth Amendment rights were violated when excessive force was used against him during any time after his detention/seizure, and when immediate medical care was not provided.

130.   As a direct and proximate result of these actions, Mr. Booker experienced pain and suffering. Defendants thus violated the substantive due process rights of Mr. Booker.

131.   As a direct and proximate cause of the acts of Defendants, Mr. Booker suffered emotional distress, mental anguish, and pain.

132.   As a result of their misconduct, Defendants Schartiger, Bragg, and Godsie are liable for Mr. Booker's injuries, either because they were integral participants in the wrongful detention and arrest, use of excessive force, and denial of medical care, or because they failed to intervene to prevent these violations.

133.   Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Booker, and therefore warrant the imposition of exemplary and punitive damages as to the individual Defendants.

134.   Mr. Booker also seeks attorney fees under this claim.

### COUNT V - MUNICIPAL LIABILITY-RATIFICATION (*42 U.S.C. § 1983*)
(By Defendant City of Lynchburg)

135.   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

136.   Defendants Schartiger, Bragg, and Godsie, acted under color of law.

137.   The acts of the individual defendants deprived Mr. Booker of his particular rights under the United States Constitution.

138.   Upon information and belief, the City, acting under color of law, who had final policymaking authority concerning the acts of the individual Defendants, ratified the defendants' acts and the bases for them. Upon information and belief, the City knew of and ratified the defendants' acts.

139.   Upon information and belief, the City has determined that the acts of the individual defendants were "within policy," which has been their response to police misconduct in Lynchburg historically.

140.   Because of the aforementioned acts, omissions, and ratification, Mr. Booker suffered loss of his constitutional rights, pain and suffering.

141.   Accordingly, the City is liable to Plaintiff for compensatory damages under *42 U.S.C. § 1983*.

142.   Mr. Booker seeks punitive damages and attorney's fees under this claim.

## COUNT VI - MUNICIPAL LIABILITY – FAILURE TO TRAIN (*42 U.S.C. § 1983*)
(By Plaintiff against the City of Lynchburg)

143.   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

144.   Defendants Schartiger, Bragg, and Godsie acted under color of law.

145.   The acts of the individual defendants deprived Mr. Booker his particular rights under the United States Constitution.

146.   The training policies of the City were not adequate to train its officers to handle the usual and recurring situations with which they must deal. This includes training with respect to tactics, handling situations utilizing the K9 element, and the use of force.

147.   The City was deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, handling situations utilizing the K9 element, and the use of force.

148.   The failure of the City to provide adequate training caused the deprivation of Mr. Booker's rights by the individual defendants; that is, Defendants' failure to train is so closely related to the deprivation of Mr. Booker's rights as to be the moving force that caused the ultimate injury.

149.    On information and belief, the City failed to train the individual defendants properly and adequately, including training with respect to tactics, handling situations, utilizing the K9 element, and the use of force.

150.    By reason of the aforementioned acts and omissions, Mr. Booker has endured mental anguish, pain, suffering, and loss of enjoyment of life.

151.    Mr. Booker also seeks punitive damages and attorney fees under this claim.

## COUNT VII - MUNICIPAL LIABILITY – Unconstitutional Custom or Policy (*42 U.S.C. § 1983*)
(Defendant: the City of Lynchburg)

152.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

153.    The individual defendants, including Schartiger, Bragg, and Godsie, acted under color of law.

154.    The individual defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the City.

155.    On information and belief, the individual defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Mr. Booker's vicious assault and battery, including animal bites.

156.    Historically officers of the Lynchburg Police Department were not disciplined or reprimanded, suspended, or otherwise retrained following incidents with citizens where the citizen received serious injury from the officers.

157.    The City, Schartiger, Bragg, and Godsie, together with other policymakers of the City and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

        a.      Using excessive force, and unnecessary non-deadly force;

b.      Providing inadequate training regarding the use of force;

c.      Employing and retaining as police officers individuals such as Defendants Schartiger, Bragg, and Godsie, whom The City at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

d.      Inadequately supervising, training, controlling, assigning, and disciplining the City officers, and other personnel, including Defendants Schartiger, Bragg, and Godsie, whom the City knew or in the exercise of reasonable care should have known, had the aforementioned propensities and character traits;

e.      Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by the City officers, Defendants Schartiger, Bragg, and Godsie;

f.      Failing to adequately discipline the City police officers, including Defendants Schartiger, Bragg, and Godsie, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g.      Announcing that use of excessive force is "within policy," including shootings that were later determined in court to be unconstitutional;

h.      Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct

involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

i.  Maintaining a policy of inaction and an attitude of indifference towards use of excessive force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in beating of unarmed people;

j.  Providing inadequate training regarding handling situations with unarmed people.

k.  Failing to properly investigate claims by Black citizens who allege that they were assaulted by Lynchburg Police Officers, harassed by Lynchburg Police Officers, illegally searched by Lynchburg Police Officers, or falsely arrested by Lynchburg Police Officers.

l.  The failure to properly train and supervise employees, both professional and non-professional, including Schartiger, Bragg, and Godsie;

m.  The failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Mr. Booker.

158.  By reason of the aforementioned acts and omissions, Mr. Booker has suffered pain and anguish, and loss of enjoyment of quality of life.

159.  Defendants, the City, Schartiger, Bragg, and Godsie, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the

foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Booker, and other individuals similarly situated.

160. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, including the use of animals to harm citizens, Schartiger, Bragg, and Godsie acted with intentional, reckless, and callous regard to Mr. Booker's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants the City, Schartiger, Bragg, and Godsie were affirmatively linked to and were a significantly influential force behind the injuries of Mr. Booker.

161. Accordingly, Defendant City of Lynchburg is liable to Mr. Booker for compensatory damages under *42 U.S.C. § 1983.*

162. Mr. Booker seeks punitive damages and attorneys' fees under this claim.

### <u>COUNT VIII - NEGLIGENCE</u>
(Schartiger, Bragg, and Godsie)

163. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

164. Police officers have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, not using unnecessary force, using less than lethal options, and only using deadly force as a last resort.

165. In doing the things alleged herein, defendants and each of them acted negligently.

166. Additionally and/or alternatively, in doing the things herein alleged, defendants, and each of them, acted with such complete indifference to plaintiff as to constitute an utter disregard of caution amounting to a complete neglect of the safety and rights of plaintiff as to shock fair-minded people.

167. Thus, the actions of defendant, and each of them, constitute gross negligence.

168.   Additionally and/or alternatively, in doing the things herein alleged, defendants, and each of them, acted consciously in utter disregard of plaintiff's rights or with reckless indifference to the consequences to plaintiff when doing the things herein alleged.

169.   Defendants, and each of them, were aware of their conduct and were also aware, from their knowledge of circumstances and conditions existing at that time, which their conduct would likely result in harm to plaintiff.

170.   As a result of the foregoing actions of defendants, and each of them, plaintiff suffered the injuries and incurred the damages described, inclusive, supra.

171.   In doing the things alleged herein, defendants, and each of them, acted willfully, wantonly, intentionally, and in conscious disregard of plaintiff's rights. Said conduct justifies the award of punitive damages.

172.   Defendants Schartiger, Bragg, and Godsie breached this duty of care. Upon information and belief, the actions and inactions of Defendants Schartiger, Bragg, and Godsie were negligent and reckless, including but not limited to:

   a.   the failure to properly and adequately assess the need to detain, arrest, restrain, or use force or excessive force against Mr. Booker;

   b.   the negligent tactics and handling of the situation with Mr. Booker, including negligence occurring immediately prior to the use of force, and negligent tactics in handling a situation of an arrest;

   c.   the negligent detention, arrest, and use of excessive force against Mr. Booker;

   d.   the negligent handling of evidence and witnesses; and

   e.   the negligent communication of information during the incident.

173.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Booker was caused to suffer injuries and severe pain and suffering. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff suffered emotional distress and mental anguish.

174.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Booker was caused to suffer injuries and severe pain and suffering. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff suffered emotional distress and mental anguish.

## <u>COUNT IX - MALICIOUS PROSECUTION</u>
### (Schartiger, Bragg, and Godsie)

175.   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

176.   On or about the 18th day of July 2018, defendants falsely, maliciously and without any reasonable or probable cause whatsoever, arrested plaintiff, Larry Anthony Booker, on multiple charges, including: (1) Maliciously cause bodily injury to K-9 owned by law enforcement under Va. Code §18.2-144.1; (2) Possess a firearm while possessing Schedule I or II controlled substance with the intent to distribute under Va. Code §18.2-308.4(c); (3) Possession of Schedule I or II controlled substance under Va. Code §18.2-250; (4) Assault and battery of Officer N. Godsie under Va. Code §18.2-57(f); (5) Possess ammunition for a firearm after being convicted of a felony under Va. Code §18.2-308.2(d); (6) Possession of a firearm after being convicted of a felony under Va. Code §18.2-308.2; (7) Possession of a firearm after being convicted of a felony within the prior ten years under Va. Code §18.2-308.2; (8) Possession of a Schedule I or II controlled substance with the intent to distribute as a third offense under Va. Code §18.2-248; (9) Resisting arrest under Va. Code

§18.2-460; (10) Driving suspended under Va. Code §46.1-301; and (11) Obstruction of justice under Va. Code §18.2-460.

177.    Pursuant to the arrest warrant issued against plaintiff, he was brought before the Court to appear for a hearing at the General District Court for the City of Lynchburg, Virginia.

178.    Upon the preliminary hearing of the charges against the Plaintiff, and after the Court heard all the evidence presented by the Commonwealth, many of the charges were *nolle prossed* or dismissed.

179.    Defendants instigated and procured, or allowed through omission to be instigated and procured, this prosecution of the Plaintiff falsely, maliciously, with intent to injure the Plaintiff's reputation in the community and with full knowledge that the charges were without any reasonable or probable cause whatsoever.

180.    Defendants instigated and procured, or allowed through omission to be instigated and procured, the prosecution of the Plaintiff, obtaining probable cause, in part, to search his vehicle by pre-textual assertion that the Plaintiff had left out in plain view a substance that appeared to be Crystal Methamphetamine.

181.    When Arko, the police K-9 was introduced to the scene by Officer Godsie, the handler of such K-9, Officer Godsie claimed that Arko had alerted on the car by giving a signal that "only he knew." The area of the alert yielded no drugs, but the alleged K-9 alert gave police the pretext they needed to keep looking until "we find something."

182.    Plaintiff contends no such alert was ever given by Arko, and that other efforts by police to implicate Mr. Larry Anthony Booker were done in concert to manufacture evidence of any kind against the Plaintiff.

183.    Plaintiff informed the police the substance was only laundry detergent.

184.   Upon field testing the substance, and after speaking to the Plaintiff, the results of which were told to Plaintiff by police, were said to be positive for Methamphetamine.  However, the Department of Forensic Science later confirmed that the material was not drugs at all.

185.   So the K-9 allegedly signaled to a car with no drugs in it at all, and the police test of the material found in the car allegedly gave a false positive test result.

186.   In fact, the alleged K-9 alert, and the field test, were pretexted to manufacture probable cause and to maliciously charge Mr. Booker in light of the beating he endured at the hands of the defendants.

187.   The Officers knew that the K-9 was not reliable in giving alleged alerts, and knew that the material seen in the car were not drugs.

188.   The Defendants also knew that Mr. Booker did not violate the law related to any actions with the K-9, yet still charged him with assault on a law enforcement animal.  The charge was later dismissed.

189.   Mr. Booker was also charged with two counts of possession of a firearm by a convicted felon, one of which was dismissed.

190.   Many of the charges against Mr. Booker were initiated in an attempt to affect the outcome of any later action against the officers related to the violations of Mr. Booker's Constitutional rights.

191.   By reasons of Defendants' actions, Plaintiff has been greatly injured in his credit and reputation and has been brought into public disrepute among the members of the community; has been required to spend substantial time away from his family and to expend substantial sums of money to defend against these wholly frivolous charges; has

been caused much anxiety, physical and mental anguish; and has been made the object of public scorn, ridicule and humiliation.

### COUNT X - NEGLIGENT RETENTION
(The City of Lynchburg)

192.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

193.     Officer Godsie has a record of interactions with citizens where he was accused of using excessive force, being untruthful, violating constitutional rights of citizens, and having bad moral character.

194.     Officer Godsie was not only allowed to remain an Officer with the Lynchburg Police Department, but was given the responsibility of running a K-9 unit where his trustworthiness would be at issue in interpreting the actions of the K-9.

195.     Despite having adequate notice of the said conduct of Officer Godsie against the citizens of Lynchburg, the Commonwealth of Virginia, and the United States of America the Defendants, the Police Chief, Lynchburg City Police Department, and the City continued to employ and retain Godsie. Defendants, the Police Chief, Lynchburg City Police Department, and the City knew and/or should have known, and had reason to know that Godsie posed a significant and foreseeable danger of harm to the Plaintiff and others.

196.     Defendants owed a duty to Plaintiff to provide a safe and civilized environment free of excessive force, including not limited  choking, biting, being beaten continuously with a baton, kicking and  punching to the head.

197.     Defendants breached that duty owed to Plaintiff when they failed to adequately train, supervise, discipline or in any other way protect the Plaintiff from Officer Godsie.

198.    As a direct result of Defendants' retention of Godsie, with said knowledge, Godsie did commit acts of harassment, assault, battery, and inflicted intentional acts of emotional distress upon the Plaintiff.

199.    As a direct and proximate result of Defendants' retention of Godsie, Plaintiff suffered damages including, but not limited to physical and psychiatric pain, humiliation and emotional distress, and other damages to Plaintiff's personal reputation, Plaintiff's professional reputation and adversely affected Plaintiff's earning capacity.

200.    That the Defendants' conduct was grossly negligent, deliberate, malicious, willful, and consequently inflicted economic and other harm on Plaintiff's well-being.

201.    That Plaintiff has suffered damage to his reputation, has been left fearful of all authority, and inflicted humiliation and embarrassment and other emotional and physical pain and suffering.

202.    The Defendants negligently placed Godsie, an unfit person, in an employment situation involving an unreasonable risk of harm to others.

**WHEREFORE**, Plaintiff, Larry Anthony Booker requests damages as follows:

A.    Against all defendants, jointly and severally, for compensatory damages in the amount of two million dollars ($ 2,000,000.00);

B.    Against all defendants, jointly and severally, for punitive damages in the amount of three hundred and fifty thousand dollars ($350,000);

C.    Declaratory relief that the policies, practices, procedures, conditions and customs of the defendant violate the Plaintiff's right to be free from the use of excessive as secured to him by the Fourteenth Amendment to the United States Constitution;

D.  Injunctive relief enjoining the defendants from engaging in the use of excessive force and

    other actions which violated the Plaintiff's rights under the *Fourteenth Amendment* to the

    United States Constitution;

E.  For costs and reasonable attorneys' fees pursuant to 42 U.S.C. Sec. 1988; and

F.  For such further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED**

/s/ Carlos A. Hutcherson
Carlos A. Hutcherson, Esq. (VSB#83100)
Hutcherson Law, PLC
3610 Campbell Avenue
Lynchburg, Virginia 24501
Telephone:    (434) 455-8100
Facsimile:     (888) 351-0363
c.hutchersonesq@yahoo.com
*Counsel for the Plaintiff*

/s/ Steven D. McFadgen, Sr.
Steven D. McFadgen, Sr., Esq. (VSB#83273)
McFadgen Law, PLC
3831 Old Forest Road, Suite 6
Lynchburg, Virginia  24501
Telephone:    (434) 385-4579
Facsimile:     (888) 873-1048
muchmorelaw@gmail.com
*Counsel for the Plaintiff*