CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

2/11/2021

JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| LARRY ANTHONY BOOKER, | CASE NO. 6:20-cv-00011 |
| *Plaintiff*, | |
| v. | MEMORANDUM OPINION |
| CITY OF LYNCHBURG, *et al*., | JUDGE NORMAN K. MOON |
| *Defendants*. | |

This matter is before the Court on Plaintiff Larry Anthony Booker's Motion for Leave to File an Amended Complaint. Dkt. 22. Defendants—Police Officers Luke Schartiger, Jonathan Bragg, and Nathan Godsie—oppose the motion. Dkt. 27. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to Magistrate Judge Robert S. Ballou for a recommended disposition. Dkt. 29. In his Report and Recommendation ("R&R"), Judge Ballou advised the Court to grant Booker's motion in part and deny it in part. Dkt. 38. Defendants filed objections to the R&R. Dkt. 39; *see* 28 U.S.C. § 636(b)(1)(C). Following Defendants' filing, the Court undertook a *de novo* review of the R&R with respect to Defendants' specific objections. Fed. R. Civ. P. 72(b)(3). The Court finds that some—but not all—of Defendants' objections have merit. The Court denies leave to amend to allege a *Monell* claim against the City for the use of excessive force based on an expressly adopted official policy or ratification (Counts I and V). But, because the Court grants leave to amend to allege *Monell* claims against the City for the use of excessive force based on an unconstitutional custom or practice and failure to train (Counts I, VI, and VII), the Court adopts Judge Ballou's R&R with respect to all other claims.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b), objections to a magistrate judge's report and recommendation require the district court to focus on "only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must review *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

When a party seeks the court's leave to amend its pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has held "that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or [when] the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks and citation omitted) (emphasis in original).

Amendment is futile when the proposed amended complaint fails to state a claim upon which relief can be granted. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349 (4th Cir. 1991). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The reviewing court accepts all the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences,

unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). When evaluating a civil rights complaint, the court "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*" *Edwards*, 178 F.3d at 244 (internal quotation marks and citation omitted) (emphasis in original). "Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (internal citation omitted).

## II.  ANALYSIS

A municipality cannot be held liable under § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, a municipality is not vicariously liable for its employees' or agents' torts or constitutional violations. But local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. *Monell* claims can arise (1) through an express policy; (2) through the decisions of final policymakers; (3) "through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens"; or (4) through persistent and widespread practices equating to the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks, citations, and alteration omitted). Once a plaintiff demonstrates the existence of an official policy, decision, omission, practice, or custom, the plaintiff also must show that it was the "moving force of the constitutional

violation." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)) (internal quotation marks omitted).

Booker alleges that the City is liable under *Monell* for Defendants' use of excessive force based on four theories: (1) an "expressly adopted official policy," Dkt. 22-1 ¶ 154, (2) a "longstanding practice or custom," *id.*, (3) ratification, *id.* ¶¶ 135–42, and (4) failure to train, *id.* ¶¶ 143–51. Judge Ballou's R&R recommended granting leave to amend to include these theories. Defendants object to Judge Ballou's recommendation and argue that amendment would be futile on all claims because an amended complaint would fail to state a claim against the City. *See* Dkt. 27 at 1–9. Defendants do not object to the remaining findings and recommendations in the R&R. Dkt. 39 at 2. The Court considers the Defendants' objections in turn, taking all facts as alleged in Booker's proposed amended complaint.

## A. Express Policy (Count I)

Unlike in his original complaint, Booker's proposed amended complaint mentions and describes specific official policy statements made by the City of Lynchburg and the Lynchburg Police Department. Booker's allegations refer to use-of-force policies—specifically, policies regarding the use of police canines, *id.* ¶¶ 42–44, 66, 68–69, the use of deadly force, *id.* ¶¶ 64, 157a, and the use of police batons, *id.* ¶ 65.

Defendants argue, however, that Booker's allegations that the officers deviated from the City's use-of-force policies fail to satisfy the causation element of a *Monell* claim. Dkt. 27 at 3. They are correct. Booker alleges:

- The force used by the officers was Deadly Force pursuant to the written policy on Use of Force (PD15-0602), as the actions were likely to cause serious physical injury, and in fact did cause serious physical injury. The policy lists when deadly force may be used, and *none of the permissive situations occurred related to Mr. Booker and the Defendants*.

- The policy related to the use of the police baton authorizes its use as a means of physical restraint or control, and defense of any person, but *forbids its use for the intentional striking of any person who is under control by an officer. Mr. Booker was struck by Officer Godsie while he was under the control of Officers Bragg and Schartiger.*

- The policy related to the use of police canines *prohibit[s] the use of the canine as a threat to make a person comply with an officer's verbal order when no physical violence is imminent. Officer Godsie used the K9 Arko to threaten Mr. Booker when no physical violence was imminent.*

Dkt. 22-1 ¶¶ 64–66 (emphasis added). Booker also makes the following allegations regarding the police canine policy:

- The police K9 was *not* used according to the City of Lynchburg/Lynchburg Police Department Policy.

- The policy states that police canines may be used as a means of: (a) physical restraint, (b) apprehending or subduing a person resisting arrest, (c) defense of any person, (d) crowd control, or (e) moving, removing or arresting any person who is obstructing a lawful police action in such a manner that the police action cannot be accomplished.

- In this case the K9 was used to threaten, intimidate, attack, inflict pain, and to cause injury.

*Id.* ¶¶ 42–44 (emphasis added). To the extent that Booker has alleged that the officers did *not* act in accordance with the City's expressly adopted official policies, the City's policies could not have been the "moving force" behind the officers' alleged constitutional violations. *Milligan*, 743 F.2d at 230.

Later in the complaint, Booker does allege that some of his injuries occurred when the officers *followed* the City's police canine policy. Dkt. 22-1 ¶¶ 68–69. Booker does not allege sufficient facts, however, to support these conclusory statements and state a plausible claim. For instance, he alleges that "[t]he K9 policy of the Lynchburg Police Department usually results in citizens getting injured by the K9, permitting officers to use excessive force under the policy" and that "part of the K9 policy for the Lynchburg Police Department is called 'pain compliance'—

having a K9 bite a suspect during arrests—which usually causes severe pain to the citizen and does not work." *Id.* These generalized statements are not grounded in any factual allegations, and the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons*, 634 F.3d at 768.

Allowing Booker to amend his complaint and assert a *Monell* claim based on an expressly adopted official policy would be futile. Simply put, Booker's allegations fail to state a claim upon which relief could be granted. Accordingly, the Court will deny Booker's Motion for Leave to Amend to assert a *Monell* claim against the City based on an expressly adopted official policy under Count I.

### B.  Unconstitutional Custom or Practice (Counts I and VII)

Where a plaintiff seeks to establish liability based on an unconstitutional municipal custom—as opposed to an express policy—he must demonstrate that such practices are "so frequent in occurrence that actual or constructive knowledge is implied." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997)). A court may infer that a custom exists "from continued inaction in the face of a known history of *widespread* constitutional deprivations on the part of city employees" but not "merely from municipal inaction in the face of *isolated* constitutional deprivations by municipal employees." *Milligan*, 743 F.2d at 229–30 (emphasis added). The "duration and frequency" of the constitutional deprivations must establish that policymakers (1) had actual or constructive knowledge of the conduct and (2) failed to stop or correct it due to their "deliberate indifference." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (4th Cir. 1987)) (internal quotation marks

omitted). The custom "must be of such a character that municipal employees could reasonably infer from it tacit approval of the conduct in issue." *Milligan*, 743 F.2d at 230.

Specifically, constitutional violations must be specific and similar enough that a municipality's indifference to them could be seen as a "deliberate choice." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (requiring a "close fit" between the unconstitutional policy and constitutional violation"). *Cf. Connick v. Thompson*, 563 U.S. 51, 62–63 (2011) (holding, at the summary judgment stage, that "four reversals" due to *Brady* violations by prosecutors in the defendant's office "could not have put [the defendant] on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here" because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind").

Still, "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403 (allowing claim of *Brady* violations to proceed where plaintiff's "brief, but non-conclusory, allegations" of "[r]eported and unreported cases from the period of time before and during the events complained of" and "a number of motions [that] were filed and granted" supported conclusion that Baltimore Police Department "knowingly turn[ed] a blind eye" to the suppression of exculpatory evidence) (internal quotation marks omitted).

Unlike in his original complaint, Booker no longer relies on a single incident—his own—to support the existence of an unconstitutional custom. Instead, he alleges thirteen instances of Lynchburg Police Department officers using force that resulted in injuries to individuals between 2001 and 2020. Dkt. 22-1 ¶ 61. Six of the alleged incidents occurred after July 18, 2018—the date of Booker's injury. But Booker cannot point to events *after* the date of his alleged attack to show

that the City knew at the time of his attack of constitutional violations by Lynchburg Police Department officers, and acted with deliberate indifference by failing to take steps to prevent future violations. *Milligan*, 743 F.2d at 230. Booker also alleges that the "Lynchburg Police Department 2018 Annual Report" found that 44 out of 53 "use of force incidents in 2018" were "within guidelines," and nine incidents remained under review. *Id.* ¶ 71.

The Court finds that Booker has stated a plausible claim based on an unconstitutional custom of excessive use of force. Booker alleges that, following a traffic stop, he was not resisting arrest or threatening the officers when they took him to the ground, ordered a police canine to attack him, struck his legs with a police baton over thirty times, punched him in the arm and head several times, and choked him. *Id.* ¶¶ 26–31, 36–41, 49, 53, 91–92. Of the seven prior use-of-force incidents Booker alleges, two involved police officers ordering a police canine to attack individuals who were not resisting arrest or threatening the officers, Dkt. 22-1 ¶¶ 61c, e, and two involved police officers beating individuals and using either pepper spray or tasers against them, even though they were not resisting arrest or threatening the officers, *id.* ¶ 61a–b. These four incidents, which occurred in 2001, 2013, and 2016, allege conduct sufficiently similar to the force used in Booker's case to plausibly support an inference of an unconstitutional custom of excessive use of force.

Plaintiffs need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994). Unconstitutional custom claims can "survive even when [the] plaintiff provides few examples." *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 535–36 (D. Md. 2020). Here, Booker alleges at least four examples of excessive use of force that are similar enough to the force used in Booker's incident that "municipal

employees could reasonably infer from [them] tacit approval of the conduct in issue." *Milligan*, 743 F.2d at 230.

Following *Owens*, district courts in the Fourth Circuit have allowed claims alleging an official custom or pattern of unconstitutional police conduct to proceed when plaintiffs have alleged a similar number of incidents over a similar timeframe. *See, e.g.*, *Washington*, 457 F. Supp. 3d at 536 (citing *Owens* in allowing claim of *Brady* violations to go forward where plaintiff alleged that the Baltimore Police Department fabricated evidence and suppressed exculpatory evidence in four cases resulting in wrongful convictions from 1981 and 1988, in addition to his own wrongful conviction in 1987); *Grim v. Baltimore Police Dep't*, No. ELH-18-3864, 2019 WL 5865561, at *21–22 (D. Md. Nov. 8, 2019) (allowing claim of custom of unconstitutional strip searches to proceed where plaintiff alleged that the Baltimore Police Department received roughly 60 complaints of unlawful strip searches from 2011 to 2016 and described three specific instances of such searches during that timeframe); *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 543 (E.D. Va. 2015) (finding allegation concerning a single shooting that occurred five years before the events underlying plaintiff's case sufficient to support claim of unconstitutional custom of failure to adequately investigate claims of excessive force).[1]

At this stage of the litigation, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Owens*, 767 F.3d at 403. Instead, the facts alleged, if true, merely must state a plausible claim. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] In addition to the instances described above, Booker's allegations regarding the City's investigations into the Lynchburg Police Department's use-of-force incidents in 2018 further support a reasonable inference that the City had constructive notice that its officers were using—and would likely continue to use—excessive force. *See Grim*, 2019 WL 5865561, at *22 (finding that plaintiff adequately alleged that the Baltimore Police Department was deliberately indifferent to its officers' performance of strip searches where only one out of sixty complaints over six years resulted in disciplinary action).

(2009)). Here, if true, Booker's factual allegations state a plausible claim that the City "maintain[ed] a policy of inaction and an attitude of indifference towards use of excessive force." Dkt. 22-1 ¶ 154i.

Booker's amended allegations of *Monell* municipal liability based on an unconstitutional custom or practice of excessive use of force state a claim upon which relief could be granted. Allowing amendment to assert such a claim would not be futile. Accordingly, the Court will grant Booker's Motion for Leave to Amend to assert a *Monell* claim against the City based on an unconstitutional custom or practice under Counts I and VII.

## C. Ratification (Counts I and V)

"[L]iability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). There must be "a deliberate choice to follow a course of action" by the "official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). To show that a decision has been ratified, a plaintiff must demonstrate that the final policymaker was both aware of the subordinate's action at issue and that it "affirmatively approved both the act and its rationale." *Davison v. Loudoun Cnty. Bd. of Supervisors*, No. 1:16-cv-932, 2016 WL 4801617, at *6 (E.D. Va. Sept. 14, 2016) (citing *Ashby v. Isle of Wight Cnty. Sch. Bd.*, 354 F. Supp. 2d 616, 627 (E.D. Va. 2004)).

Booker's claim in the proposed amended complaint that the City ratified Defendants' conduct is nearly identical to his claim in the original complaint. Booker alleges:

- Upon information and belief, the City, acting under color of law, who had final policymaking authority concerning the acts of the individual Defendants,

ratified the defendants' acts and the bases for them. Upon information and belief, the City knew of and ratified the defendants' acts.

- Upon information and belief, the City has determined that the acts of the individual defendants were "within policy," which has been their response to police misconduct in Lynchburg historically.

Dkt. 22-1 ¶¶ 138–39; *compare* Dkt. 1 ¶¶ 99–100. "These allegations are, again, no more than conclusions devoid of factual content" because Booker has failed to "cite[] any statement or action taken by any person acting on behalf of the City." *Booker v. City of Lynchburg*, No. 6:20-cv-11, 2020 WL 4209057, at *8 (W.D. Va. July 22, 2020). Booker's additional allegation that the City "always affirmed the decision of the Lynchburg Police Department related to claims of excessive force and never independently investigated any of the claims," Dkt. 22-1 ¶ 101d, is insufficient to satisfy the lack of factual support. *Id.*

And as before, the City's determination that the Defendants acted "within policy" "could not have been the 'moving force' behind those [D]efendants' alleged constitutional violations if the City's actions *followed* the Police Officer Defendants' actions." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 397). Because even properly supported factual allegations of subsequent approval "could not satisfy the strict causation requirement imposed on *Monell* claims," *id.*, the City cannot be liable under a theory of ratification.

Booker's allegations of municipal liability under *Monell* based on ratification fail to state a claim upon which relief could be granted. Therefore, allowing amendment to assert such a claim would be futile. Accordingly, the Court will deny Booker's Motion for Leave to Amend to assert a *Monell* claim against the City based on a ratification theory under Counts I and V.

### D.  Failure to Train (Counts I and VI)

A municipality may be liable when its failure to properly train police "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Still, "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[] [may] the city . . . be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Still, "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403.

To make out a *Monell* claim for failure to train, a plaintiff must allege (1) that a specific training deficiency causes city employees to violate citizens' constitutional rights and (2) that city policymakers had actual or constructive notice that the deficiency causes such violations. *Canton*, 489 U.S. at 390–91.

Training deficiencies can include (1) "express authorizations of unconstitutional conduct," (2) "tacit authorizations" of such unconstitutional conduct, or (3) failures to adequately "prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). To properly plead that the training deficiency causes constitutional violations, the plaintiff must allege either that an inadequately trained employee engaged in a pattern of unconstitutional conduct or that a constitutional violation is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan Cnty.*, 520 U.S. at 409 (citing *Canton*, 489 U.S. at 390 n.10) ("For example, city policymakers know to a moral certainty that their police officers will be

required to arrest fleeing felons. . . . Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.") (internal citations omitted). "[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407–08 (citing *Canton*, 489 U.S. at 390–91).

To show city policymakers' notice and conscious disregard of the training deficiency and ensuing constitutional violations, "[a]ctual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body," and "[c]onstructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." *Spell*, 824 F.2d at 1387. "If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action . . . ." *Bryan Cnty.*, 520 U.S. at 407 (citing *Canton*, 489 U.S. at 390, 397).

Booker's allegations state a plausible claim for failure to train. Booker alleges that the officers lacked annual excessive force training. *Id.* ¶ 72; *see also id.* ¶ 101c. He also alleges that the City's training in "tactics, handling situations utilizing the K9 element, and the use of force" was inadequate to prepare officers to "handle the usual and recurring situations with which they must deal." *Id.* ¶ 146. He asserts that "[t]he failure of the City to provide adequate training caused the deprivation of Mr. Booker's rights by the individual defendants," *id.* ¶ 148, and that "[t]he City

was deliberately indifferent to the obvious consequences of its failure to train its officers adequately." *Id.* ¶ 147.

Although these allegations, standing alone, may not suffice, Booker alleges sufficient facts to support these reasonable inferences and thereby state a plausible claim. He describes four prior instances of officers' use of excessive force against individuals not resisting arrest or threatening officers. *Id.* ¶ 61. And he contends that the officers' use of similar force against him in similar circumstances ran counter to the City's express policies. *Id.* ¶¶ 42–44, 64–69. Finally, Booker alleges that the City was aware of and investigated 53 use-of-force incidents in 2018 but either concluded that the use of force was constitutional or failed to reach any conclusion. *Id.* ¶ 71.

Again, at this stage of the litigation, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Owens*, 767 F.3d at 403. Instead, the facts alleged, if true, merely must state a plausible claim. *Id.* (citing *Iqbal*, 556 U.S. at 678). Here, if true, Booker's factual allegations support reasonable inferences (1) that officers repeatedly deprived individuals of their constitutional rights, in part by deviating from express use-of-force policies, and (2) that the City was on notice that its existing use-of-force training programs failed to "prevent constitutional violations." *Bryan Cnty.*, 520 U.S. at 407. Accordingly, Booker states a plausible claim that the City's "continued adherence" to its existing training programs demonstrates "conscious disregard" of a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* at 407, 409.

Booker's allegations of *Monell* municipal liability based on failure to train state a claim upon which relief could be granted. Allowing amendment to assert such a claim would not be futile. Accordingly, the Court will grant Booker's Motion for Leave to Amend to assert a *Monell* claim against the City based on failure to train in Counts I and VI.

**CONCLUSION**

For these reasons, the Court sustains in part and overrules in part the Defendants' objections to the R&R. Finding that amending the complaint to add such claims would be futile, the Court will deny leave to amend to assert *Monell* claims against the City based on an expressly adopted official policy or on ratification, as alleged in Counts I and V. However, the Court will grant leave to amend to assert *Monell* claims against the City based on an unconstitutional custom or practice and failure to train, as alleged in Counts I, VI, and VII.

The Court adopts Judge Ballou's R&R in all respects, except to the extent that the R&R would grant leave to amend to assert *Monell* claims against the City based on an expressly adopted official policy or on ratification, as alleged in Counts I and V.

An appropriate Order will issue.

The Clerk of the Court is **DIRECTED** to send a certified copy of this Memorandum Opinion and Order to all counsel of record and to Magistrate Judge Ballou.

ENTERED this ⎯11th⎯ day of February, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE